## FRIEDMAN *v.* SCHLEUTER.

### Opinion delivered November 25, 1912.

1. FRAUDS, STATUTE OF—CONTRACT TO BE PERFORMED WITHIN YEAR.—
   An oral contract for erection of a building which may be performed
   within a year is not prohibited by the statute of frauds. (Page
   584.)

2. CONTRACTS—FORMAL REQUISITES—WRITING.—Where the terms of
   a contract are agreed upon, the agreement becomes effective, though
   it is expected that the terms of the contract will be embodied in a
   written instrument and signed. (Page 584.)

3. SAME—BUILDING CONTRACT—TIME FOR PERFORMANCE.—Where a
   contract to erect a building does not fix the time for completion, the
   law implies that a reasonable time for performance is intended.
   (Page 587.)

4. SAME—BUILDING CONTRACT—TIME OF PAYMENT.—In the absence of
   any provision in a building contract as to the time of payment, the
   law presumes that payment shall be made on the completion of the
   work. (Page 587.)

5. SAME—BUILDING CONTRACT—CERTAINTY.—A contract for the con-
   struction of a building contract according to the plans of an architect
   which fixes the time for completion and damages for delay and which
   requires the contractor to enter upon the work immediately is suffi-
   ciently definite, though the intention was that the contract should
   be reduced to writing as evidence of its terms. (Page 587.)

Appeal from Sebastian Circuit Court; Fort Smith District;
*Daniel Hon,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellees brought this suit in the circuit court against
appellants to recover damages for the alleged breach in a
building contract with them. Appellees were contractors
and house builders, and appellants were the owners of certain
lots in the city of Fort Smith upon which they desired to erect
a three-story business house. Appellants advertised for
bids for the erection of the house on the lots according to the
plans and specifications furnished by them. The notice
and advertisement for bids and the plans and specifications
which accompanied them comprised twenty-two typewritten
pages of legal size. Hence it is impracticable to set them out
in full here. We deem it sufficient to say that the description
of the lots upon which the house was to be built is contained
in the notice and advertisement for bids. The plans and
specifications were prepared by the architect of appellant,

and were full and complete. They contained a definite and detailed statement of the kind and quality of material to be used, the dimensions of the building and the various rooms to be contained therein and the exact manner in which every part of the work should be done. In short, they were as specific as could be, and were intended as a definite and specific guide in the erection of the building. They provided for a bond to be executed by the builder, and contained clauses relative to changes in the contract and disputes arising between the builder and owner. They provided that the work should be done by union labor, and that the contractor should be responsible for all damage suits arising out of and in connection with the work. Another clause provides that the details, drawings and specifications are intended to describe the work, and shall not be deviated from without written instructions from the architect. The notice and advertisement reserved to the owner three days to determine the successful bidder, and provided that any and all bids might be rejected after the bids were opened. The bid of the appellees was as follows:

"Fort Smith, Ark., August 9-11.

"We propose to erect the building for Friedman-Mincer according to plans and specifications for the sum of $26,229.00 (twenty-six thousand two hundred and twenty-nine dollars). This bid is subject to the agreement of June 15, 1911, between architect and contractors and subject to three days' acceptance."

The testimony on the part of appellees tended to show that the bids were opened on Thursday, and that appellants, after looking at the bids, said they would not need three days to determine who was the successful bidder, that they would decide the question the next morning.

Will Schleuter, one of the appellees, testified that he met Mr. Friedman, one of the appellants, the next morning after the bids had been opened, and, in regard to the acceptance of the bid of appellees by appellant, we quote from his testimony as follows:

"A. I met Mr. Friedman and asked him whether he had decided on who was to have the job. Q. That was Friday morning about what time? A. That was between 9 and 10 o'clock. Q. Where did you meet him? A. Right at Padgett's cafe. Q. In front of where their office had been?

A. Yes, sir. Q. And he said, Yes, they had decided that yesterday? A. Yes, sir; and that we got the job, and he was glad we got it, and that he had told Mr. Strong to make up the contract, and that he was working on it then. I told him I was glad of it, glad that we got the job, and went on. That same afternoon, Friday afternoon, I met Mr. Mincer on the car, and he told me the same thing, that we had the job, and they were fixing up the contract and bond then. So the next morning, that is Saturday morning, there was to be another job let out of Mr. Strong's office, and I went up there to see him about it, and I went up, and he said: 'Here is the bond, you take the bond and have it fixed up and come back here at 10 o'clock, and I will have the contract ready for you,' so I took the bond and was going to give it to Fred, my brother, and that is all I know about that; he took it off at that time."

He testified further that appellees were the lowest bidders, and that the architect who made the plans for appellants, and whose business it was to prepare the bond and contract, did prepare the bond and gave it to appellees and also prepared a written contract. The testimony showed that appellees executed the bond with sureties, and that the bond was submitted by them to appellants who retained it. Later on the appellants refused to sign the contract, and notified appellees that they would not be permitted to construct the house.

Fred Schleuter testified that appellants examined the bond executed by appellees and accepted it. He said they told him the bond was satisfactory, and then suggested that we had not agreed on the time limit and the forfeiture. After some discussion of the matter, we agreed to complete the job in one hundred working days and agreed on twenty-five dollars per day for damages for delay.

He also stated that Mr. Mincer, one of the appellants, said they had not signed the contract that morning, that he wanted to see his attorney and would be ready to sign the contract at 4 o'clock that afternoon. That he went to see Mr. Mincer about 4 o'clock, and after some discussion about the matter he declined to sign the contract.

Appellees also adduced evidence tending to show the amount of damages suffered by them.

The evidence on the part of appellants tends to show that they did not accept the bid of appellees by exercising their right under the notice and advertisement to reject it. They were questioned in regard to the conversation with Will Schleuter and Fred Schleuter, and denied that they had it or that they told them that appellees' bid would be accepted.

The architect admitted that he prepared the contract, but testified that he wrote it at the suggestion of one of the appellees, and that neither one of appellants requested him to prepare it.

The jury returned a verdict for appellees, and from the judgment rendered appellants have duly prosecuted an appeal to this court.

*Read & McDonough,* for appellants.

1. There was no agreement entered into between appellants and appellees.

It is a requisite of all contracts that the minds of the contracting parties must meet and assent to the same thing in the same sense and at the same moment of time. 90 Ill. App. 515; 77 N. W. 665. It has been held that in order to constitute a binding contract the terms of payment as well as other elements of a contract must be agreed upon. 78 Pac. 493.

2. If there was an agreement entered into, it was oral and not binding upon the parties, for the reason that it was the understanding and intention of the parties that any agreement should be reduced to writing before it should become binding.

Even if nothing had been said between the parties as to whether or not the contract should be reduced to writing, the custom shown to exist with reference to such contracts being in writing would control and be considered as a part of the agreement. 21 Ark. 85; 25 Ark. 261; 9 Cyc. 582; 46 So. (La.) 620; 106 La. 309; 30 So. 863. If it was the understanding and intention of the parties to draft and sign a written contract covering the oral agreement, the oral agreement is not binding and enforceable without being reduced to writing and signed. 106 Pac. 135; 148 Ill. App. 316; 130 N. W. 1097; 116 Pac. 650; Clark on Contracts, 62.

*C. E. & H. P. Warner,* for appellees.

1.   On appellants' contentions as made, the case was for the jury, and a directed verdict was properly refused.

The first contention raised by appellants, that there was no agreement made and entered into, involves a dispute or controversy as to the facts, and, such being the case, it was necessarily a matter for the jury under proper instructions as to the law.   The second contention, that the contract was oral and hence not binding because it was not reduced to writing, was a material question of fact as to the intention of the parties in this respect, and therefore a question for the jury. Clark on Contracts, 62, and cases cited below.

2.   The parol contract was binding.   95 Ark. 426; 144 N. Y. 209; 21 N. Y. 308; 69 S. W. 225; 115 S. W. (Tex.) 903; 112 S. W. (Ky.) 1126; 21 N. Y. 305; 39 Pac. (Wash.) 131; 14 S. W. (Mo.) 872; 121 Mo. App. 168; 63 Mo. 141; 117 N. Y. App. Div. 66; 147 Fed. 641; 160 Fed. 240; 7 Am. & Eng. Enc. of L. (2 ed.), 140; 73 Ky. 632; 91 N. E. 975; Story on Contracts, 370, 372; Bishop on Contracts, 129; 1 Parsons on Contracts 518; 14 O. St. 292; 6 Cyc. 76; *Id.* 66; 9 Ind. 192; 95 Va. 527; 77 Ark. 150.

HART, J., (after stating the facts).   Counsel for appellants asked the court to direct a verdict for them, and the refusal of the court to do so is the only ground upon which we are asked to reverse the judgment.   They asked for a directed verdict on the ground that no agreement was ever made between appellants and appellees, and contend further that, if there was an agreement entered into, it was an oral agreement, and not binding on the parties, because it was the understanding and intention of the parties that any agreement entered into should be reduced to writing before it should become binding.

The contract could be performed within a year, and contracts of this character are not prohibited by the statute of frauds in this State.   Hence a written contract was not necessary.   6 Cyc. 10; *Sarles* v. *Sharlow,* 37 N. W. (Dak.) 748.

In the case of *Emerson* v. *Stevens Grocer Company,* 95 Ark. at page 426, the court said:   "If the contract is actually entered into and made, whether by messages, correspondence or by word of mouth, the agreement becomes at once effective,

although it was expected that the terms would afterwards be embodied in a written instrument and signed. The mere reference to a future contract in writing would not negative a present contract if the terms thereof were actually assented to by both parties. The written draft of the contract would only be a convenient record of the agreement and the evidence thereof, but it would only constitute evidence of the agreement, and its absence would not affect the binding force of the contract that was closed. Therefore, if an unconditional offer is made, and that offer accepted, this will constitute an obligatory contract, although the parties also understand that a written contract embodying the terms should be drawn and executed."

The principles of law applicable here are well stated in the case of *Rosster v. Miller,* 3 App. Cas. (Eng.) at page 1151, where Lord Blackburn said: "I quite agree with the Lords Justices (wholly independent of the statute of frauds) it is a necessary part of the plaintiff's case to show that the two parties had come to a final and complete agreement; for, if not, there was no contract. So long as they are only in negotiation, either party may retract; and, though the parties may have agreed on all the cardinal points of the intended contract, yet, if some particulars essential to the agreement still remain to be settled afterwards, there is no contract. The parties, in such a case, are still only in negotiation. But the mere fact that the parties have expressly stipulated that there shall afterwards be a formal agreement prepared, embodying the terms, which shall be signed by the parties does not, by itself, show that they continue merely in negotiation. It is a matter to be taken into account in construing the evidence and determining whether the parties have really come to a final agreement or not. But, as soon as the fact is established of the final mutual assent of the parties so that those who draw up the formal agreement have not the power to vary the terms already settled, I think the contract is completed."

To the same effect, see *Western Roofing Tile Co. v. Jones,* 26 Okla. 209, 109 Pac. 225, 23 A. & E. Ann. Cases, 127; 7 A. & E. Ency. of Law, 140; Page on Contracts, § 54; *Boysen v. Van Dorn Iron Works,* 87 N. Y. Supp. 995; *Lowrey v. Danforth,* (Mo. App.) 69 S. W. 39; *Green v. Cole,* 103 Mo. 70, 15 S. W.

317; *International Harvester Co.* v. *Campbell*, (Tex. Civ. App.) 96 S. W. 93; *Lane* v. *Warren*, 115 S. W. 903, (Tex. Civ. App.); *Disken* v. *Herter*, 73 N. Y. App. Div. 453.

In the application of the principles above announced to the facts in the case at bar, it can not be said that the undisputed evidence shows that the agreement made was not the end of negotiations between appellants and appellees.

Counsel for appellants insist that, because the contract was to be reduced to writing and a bond tendered accompaying it, and because the notice and advertisement and the plans and specifications did not provide a time of payment to the builder and a time for the completion of the contract, no contract could exist without such writing.

The testimony of appellees shows that the bond provided for in the notice and advertisement was executed by appellees and accepted by appellants; that their bid was accepted by appellants; that they subsequently agreed that the time for the completion of the building should be one hundred working days, and that the damages for delay in the completion of the building should be twenty-five dollars per day. It appears then from their testimony that all the terms of the contract were agreed upon and its reduction to writing was intended merely for facility of proof as to its terms. In such cases the provision for a contract in writing is not inconsistent with the present contract, and this is especially true in a case where the things to be done are provided for in written plans and specifications, which are so definite and detailed as to present a perfect guide as to the rights and duties of the respective parties in the erection of the proposed building. According to the evidence for appellees, the minds of appellants and appellees were in accord as to all the provisions of the contract, and the writing was intended to exhibit and set forth just what they had agreed upon and understood. Appellants did more than tell appellees that they were the lowest bidders. According to the testimony of appellees, they told them that they had gotten the job, and that their architect was then working on the contract. As we have already seen, the terms of the contract were then as definite and certain as they could be, except as to the time of payment, the time of completion of the work, and the amount of damages for

delay in the completion of the work. The time for completion of the work and the damages for delay were subsequently agreed upon.

Moreover, where a contract fails to specify a time for completion, it will be implied that a reasonable time for performance was intended. 6 Cyc. 66; *Long* v. *Chas. T. Abeles & Co.*, 77 Ark. 150.

In regard to the time of making payment, it may be said that, in the absence from the contract of any provisions on the point, the time of making payment is presumed to be completion of the work. 6 Cyc. 76; *Wright* v. *Maxwell*, 9 Ind. 192; *Shanks* v. *Griffen*, 14 B. Mon. (Ky.) 153.

The contract then could not be said to be too uncertain and indefinite for enforcement. Under the instructions of the court, the jury in effect found that the contract was made or entered into, that its performance was to be immediately entered upon, and that the preparation of the written form of the contract was a matter to be subsequently attended to, and that the written contract was not intended to be a condition precedent to the taking effect of the contract. The verdict of the jury was supported by the evidence, and the court did not err in refusing to direct a verdict for appellants.

No other assignments of error are urged for the reversal of the judgment, and the judgment will be affirmed.