**McKENZIE v. BOORHEM et al.**
**Civ. No. 534.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.
Jan. 19, 1954.

Frank J. Wills, Little Rock, Ark., for plaintiff.

Joe W. McCoy, Malvern, Ark., for defendants.

JOHN E. MILLER, District Judge.

On November 29, 1952, plaintiff, an Illinois citizen, as administratrix of the estate of Janet M. Hall, deceased, filed her complaint against the defendants, William Boorhem, an Arkansas citizen, and Malvern Gravel Company, a Delaware corporation authorized to do and doing business in Arkansas, seeking to enforce certain alleged rights arising by virtue of a contract entered into between the defendant, William Boorhem, the said Janet M. Hall, and certain other persons on November 1, 1946. Plaintiff sought judgment against defendants in the alternative, as follows:

(1) "If all the conditions of said agreement have been met and performed, that she have judgment against William Boorhem for $1,500.00, or such other amounts as he may have collected in dividends or otherwise on said stock, * * *; that Malvern Gravel Company be required to pay to her or to her assignee all future dividends and other

payments attributable to said 30 shares of stock until she and her assignee have received in the aggregate $15,616.12, less such principal judgment which she may receive against William Boorhem; and that physical possession of the certificate representing said 30 shares be delivered to her or to some third person in trust until such payments have been fully made."

(2) "If all the conditions of said agreement have not been met and performed, that William Boorhem be required to transfer and deliver to her in her representative capacity 30 shares of common stock of Malvern Gravel Company and that she have judgment against him for $1,500.00, or such other amounts as he may have collected in dividends or otherwise on said 30 shares."

On April 14, 1953, Malvern Gravel Company filed its answer denying the allegations of the complaint, and on April 17, 1953, William Boorhem filed his answer denying plaintiff's right to relief and alleging that he was owner of the said 30 shares of stock and fully entitled to the dividends in the amount of $1,500 which he had collected.

The issues thus being joined, the case was set for trial during the 1953 fall term of Court. In the meantime, plaintiff and defendant Boorhem, acting through their attorneys, began negotiating with an end in view of reaching a settlement in the case. Plaintiff was represented by Frank J. Wills, and the defendant, William Boorhem, was represented by E. R. Parham, Jr., who associated with him Martin K. Fulk as an attorney of record for Boorhem. On September 23, 1953, Wills submitted to Parham an offer to settle on the following terms: Plaintiff to pay to Boorhem $3,000 and dismiss her suit; defendant to retain the $1,500 in dividends he had collected, and to transfer to plaintiff the 30 shares of stock in question; parties to pay their own costs. Parham contacted Boorhem by telephone and advised him of the offer. Boorhem refused to accept the offer, and stated that he de-

sired at least $3,800 in order that he might receive a net amount of $3,000 after deduction of attorney's fee and costs, which were to be approximately $800. Wills was informed of Boorhem's desire to obtain $3,800, but refused to submit such an offer to his client.

Counsel conferred and concluded that their respective clients might agree upon a figure of $3,400. Parham again contacted Boorhem by telephone, told him that plaintiff would not consider the sum of $3,800, and suggested that plaintiff might agree to settle if the sum were lowered to $3,400. Boorhem told Parham that if he could get $3,400 to "wrap it up." Parham then contacted Wills, informing him of the new offer, and Wills received authorization from plaintiff to settle for that amount, i. e., $3,400. The settlement reached was as follows: Plaintiff was to (1) pay Boorhem $3,400, (2) dismiss the suit with prejudice, and (3) pay her own costs. Defendant was to (1) transfer the 30 shares of stock to plaintiff, (2) retain the $1,500 in dividends he had collected, and (3) pay his own costs. The settlement was subject to the approval of the Probate Court of Cook County, Illinois, and said approval was procured. Thereafter, Wills received plaintiff's certified check in the amount of $3,400, along with a copy of a settlement agreement to be executed by Boorhem, and took these items to Parham to exchange for the 30 shares of stock, but it developed that the shares had not been assigned by Boorhem, and Parham then mailed to Boorhem a copy of the settlement agreement and instructed him how to endorse the stock certificate. However, Boorhem refused to transfer the shares of stock and to consummate the settlement agreement. Instead, he paid Parham's attorney's fee, dispensed with his services, and employed his present counsel to represent him.

On October 30, 1953, plaintiff filed a motion for judgment in accordance with the settlement agreement and on January 5, 1954, a hearing was had on said motion. Following the hearing the at-

.

torneys for the respective parties filed briefs in support of their contentions, and the motion is now ready for final disposition.

Plaintiff contends that Boorhem's attorney had express authority to enter into the settlement agreement and that it is binding upon the parties.

On the other hand, defendant Boorhem contends (1) that Parham had no authority to enter into the settlement agreement, and (2) even if he did have authority, no actual agreement was reached because plaintiff submitted a counter offer instead of accepting defendant's offer.

The parties are not in disagreement as to the law governing settlement agreements, and indeed it seems that said rules of law are so well settled as to be beyond dispute.

Generally, a compromise agreement may be enforced by motion in the original action. Arkansas State Highway Commission v. Partain, 193 Ark. 803, 807, 103 S.W.2d 53; Union Central Life Insurance Company v. Boggs, 188 Ark. 604, 66 S.W.2d 1077; Ozark Insurance Company v. Leatherwood, 79 Ark. 252, 96 S.W. 374; 15 C.J.S., Compromise and Settlement, § 48, p. 770.

Under the Arkansas law, an attorney has no implied authority to enter into a compromise agreement. Turner Furnishing Goods Company v. Snyder, 201 Ark. 699, 146 S.W.2d 913; Cullin-McCurdy Construction Company v. Vulcan Iron Works, 93 Ark. 342, 124 S.W. 1023. However, when a client gives his attorney specific authority to enter into a compromise agreement, such an agreement, if entered into by the attorney, is valid and binding. Byford v. Gates Brothers Lumber Company, 216 Ark. 400, 225 S.W.2d 929; Moore v. Murrell, 56 Ark. 375, 19 S.W. 973; 30 A.L.R.2d 944–958; 5 Am.Jur., Attorneys at Law, Section 98, Pages 318–320; 7 C.J.S., Attorney and Client, § 105, p. 928 et seq.

In the instant case the Court is convinced that the defendant Boorhem expressly gave his attorney, Parham, authority to enter into the settlement agreement. As heretofore stated, Boorhem first demanded $3,800, but when informed that plaintiff would not settle at that figure, he authorized Parham to "wrap it up" for $3,400. At the hearing Boorhem did not deny making said statement, but contended that he still understood that he was to receive $3,000 after attorney's fee and costs were deducted, and if this were in fact true defendant's contention that Parham had no authority to enter into the settlement agreement might be well founded because there would have been no meeting of minds as between Boorhem and Parham. Dodson v. Wade, 193 Ark. 534, 101 S.W.2d 182. However, it seems apparent that Boorhem knew he was authorizing a settlement whereby he would net less than $3,000. He had already been informed that his attorney's fee would be approximately $800, which was the reason he asked for $3,800 in the first instance. When that offer was rejected and he authorized an offer of $3,400, certainly Boorhem, an intelligent businessman, knew that he would net less than $3,000 after deduction of attorney's fee. Therefore, the Court is of the opinion that the settlement agreement entered into by Parham was precisely the agreement authorized by Boorhem, and defendant's contention that Parham had no authority to enter into said agreement is without merit.

Defendant's remaining contention is that, assuming Parham had authority to settle for $3,400, when Parham offered to settle for said amount the plaintiff tendered a conditional acceptance, which amounted to a counter offer, and that Boorhem then rejected the counter offer. It is true that if an offeree proposes new conditions, his purported acceptance is a counter offer which may be rejected by the original offeror. Byford v. Gates Brothers Lumber Company, supra; Tucker Duck & Rubber Company v. Byram, 206 Ark. 828, 177 S.W.2d 759; Smith v. School District No. 89, 187 Ark. 405, 59 S.W.2d 1022.

Specifically, defendant contends that the settlement agreement which was sent to Boorhem for signing contained certain provisions whereby Boorhem was to release any claims he might have against plaintiff and others, and that the inclusion of said provisions amounted to a counter offer. However, the alleged counter offer which was tendered to Boorhem was not introduced in evidence and the record does not disclose what additional requirements were made by the plaintiff, if any, or whether they were in fact beyond the provisions of the agreed settlement or were fully in accord with said settlement. In any event, the provisions of said tendered written agreement are immaterial, for the following reasons:

■ Parham, with specific authority from his client, offered to settle for $3,400. Wills, with specific authority from his client, accepted said offer. The settlement agreement was entered into at that time, the terms being that plaintiff pay defendant Boorhem $3,400, dismiss her suit with prejudice, and pay her own costs, and that Boorhem retain the $1,500 dividend payments, transfer the 30 shares of stock to plaintiff, and pay his own costs. This agreement was oral and was entered into between Wills and Parham as attorneys for their respective clients. The agreement was complete and binding at that time, and the fact that the written agreement tendered to Boorhem for signing might not have conformed to the oral settlement agreement would not in any wise affect the validity of said oral agreement.

In Arkansas Anthracite Coal & Land Company v. Dunlap, 142 Ark. 358, at page 361, 218 S.W. 839, at page 840, the Court said:

"Again, it is contended that it is shown by the undisputed evidence that the alleged oral agreement was not consummated, but that it was merely a part of negotiations between the parties which were to result, if finally agreed upon, in a written contract. * * * The testimony adduced by appellees tended to show that the terms of the contract of settlement were fully and definitely agreed upon, notwithstanding the fact that the agreement was to be reduced to writing and signed by the parties, and that appellants in preparing the written contract introduced into it new matter not in accordance with the oral agreement, which frustrated the effort to reduce the contract to writing. The court submitted this issue to the jury upon an instruction requested by appellants themselves, and the verdict must be treated as settling the issue against the contention of appellants. If, as stated by the witnesses introduced by appellees, there was a completed oral agreement, the parties were bound by it, even though it was to be reduced to writing. Friedman v. Schleuter, 105 Ark. 580, 151 S.W. 696.

"Even if the original written agreement with respect to payment of royalties was a matter within the statute of frauds, so as to require evidence of the written agreement, the contract for the settlement of the disputed claim was not within the statute of frauds, and it is not essential to its validity that it should be in writing."

As heretofore stated, in the instant case Parham and Wills, with specific authority, entered into the oral settlement agreement. Subsequent to this, plaintiff's Chicago counsel prepared and transmitted to Wills the written settlement agreement to be tendered to Boorhem for signing, and the provisions of said written agreement, if not in conformance with the oral agreement, would have absolutely no effect upon the validity of said oral agreement.

Therefore, a judgment in accordance with the oral settlement agreement, as hereinbefore set forth, should be entered.