Monte **BOYD** and Otis Hammond, d/b/a **Boyd-Hammond Contracting Company,** a partnership, Plaintiffs,

v.

**LARCO–INDUSTRIAL PAINTING CORPORATION,** a corporation, and Fireman's Fund Insurance Company, a corporation, Defendants.

No. FS–71–C–60.

United States District Court, W. D. Arkansas, Fort Smith Division.

April 9, 1973.

Lynn M. Ewing, Jr., of Ewing, Ewing, Carter, Wight, & Woodfill, Nevada, Robert T. Dawson, of Hardin, Jesson & Dawson, Ft. Smith, Ark., for plaintiffs.

Victor Miceli, of Morgan & Miceli, Riverside, Cal., James E. West, of Daily, West, Core & Coffman, Ft. Smith, Ark., for defendants.

## OPINION

JOHN E. MILLER, Senior District Judge.

### Statement

There is before the court a motion filed on March 3, 1973, by defendants Larco Industrial Painting Corporation (Larco) and Fireman's Fund Insurance Company (Fireman's) for summary judgment "in the defendants' favor dismissing the action on the ground that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law." The motion is based upon the pleadings, records and files, the memoranda of points and authorities and such evidence as may be presented at the hearing on said motion.

Rule 56(c), Fed.R.Civ.P., provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(e) provides:

"The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits."

Rule 43(e) provides:

"When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

In commenting on Rule 43(e), it is stated in 5 Moore's Federal Practice, 2d Ed., p. 1385:

"This flexibility will prove of service in hearing motions for summary judgment * * *. While motions are normally heard on affidavits, this does not preclude a trial."

It became apparent to the court that the parties, notwithstanding the diligence of their respective attorneys, were unable to make any progress toward the settlement of the issues in this case, and in order to expedite the trial of the case, the court on February 28, 1973, fixed Thursday, March 15, 1973, as the date for a pretrial upon all questions involved in the case. On the same date, February 28, in order to protect the parties' claims to the proceeds of the settlement of the claims against the United States arising out of the contract, the court entered a temporary restraining order restraining the plaintiffs Monte Boyd and Otis Hammond from either directly or indirectly obtaining the proceeds of the settlement of those claims.

Following the setting of the date for a pretrial on all the issues involved in the litigation, the defendant Larco filed a motion to shorten the time in which to file a motion for summary judgment so

that the motion could be heard on Thursday, March 15, 1973, together with all other matters.

The attorneys for the respective parties conferred by telephone and agreed to ask the court to set a hearing on the motion for summary judgment and for a full pretrial conference, if necessary, on Monday, April 2, 1973, which the court did. On that date a full and complete hearing was held on the motion for summary judgment. At the conclusion of the hearing, the court stated that the motion for summary judgment would be taken under consideration and pretrial proceedings would be postponed until the court had disposed of the motion for summary judgment. At the hearing on the motion, the court had before it and considered the entire record in the case and the memoranda of points and authorities submitted by counsel for the parties, together with the ore tenus testimony.

The court must determine from its examination of the record whether there is a genuine issue as to any material fact. If the court determines that there is no material issue of fact, then the court must determine whether under the undisputed facts the movants, defendants, are entitled to a judgment as a matter of law.

The material facts as established by the entire record are as follows:

### Facts

On June 28, 1968, plaintiffs entered into contract No. DABDO5–68–C–0383 with the United States to do the exterior painting of various contonment and hospital area buildings at Fort Chaffee near Fort Smith, Arkansas, for a total sum of $227,817.50. On March 15, 1968, the defendant Larco entered into a subcontract with plaintiff Boyd-Hammond, in which Larco agreed to perform "certain labor and furnish certain material for the erection and completion of the basic bid and alternate No. 1 of the Government contract * * *" as per plans and specifications and addenda prepared by the Government. The plaintiffs agreed to pay the subcontractor the sum of $107,000, plus all additional amounts resulting from any future change orders. Larco began work under the terms of the subcontract in the fall of 1969 and worked until March 1970, when it ceased working, and Boyd-Hammond was required to complete the work as per the terms of its contract with the Government. Various amounts were paid to the parties as the work progressed.

On August 30, 1971, plaintiffs Monte Boyd and Otis Hammond, d/b/a Boyd-Hammond Contracting Company, a partnership, filed this action against the defendants seeking to recover damages for alleged breach of the subcontract between plaintiffs and Larco.

The plaintiffs are partners, d/b/a Boyd-Hammond Contracting Company, and citizens of Missouri, with their principal place of business in Nevada, Missouri. The defendant Larco is a corporation organized and existing under the laws of the State of California with its principal place of business in the City of Riverside, Calif. It is duly licensed to do business in the State of Arkansas and is doing business within the State. The defendant Fireman's is an insurance company organized and existing under the laws of the State of California, and has its principal place of business in the City of San Francisco. It is likewise duly licensed to do business in the State of Arkansas and is doing business in the State.

There is complete diversity of citizenship between the plaintiffs and the defendants and the amount involved exceeds the sum of $10,000, exclusive of interest and costs. Jurisdiction is granted by 28 U.S.C.A. § 1332, and the substantive law of Arkansas applies.

The original answer and counterclaim of Larco were filed September 22, 1971. In the counterclaim Larco seeks to recover damages it alleged was caused by reason of being required to perform work in excess of the contract requirements and by being delayed in the per-

formance of its work by Boyd-Hammond.

Plaintiffs filed their reply to the answer and counterclaims on October 13, 1971.

During the performance of the work by Boyd-Hammond and Larco, certain disputes arose with the Government concerning the performance of the contract, and by agreement Boyd-Hammond on its behalf and on behalf of Larco filed various claims with the Government under the applicable claim procedure. Since the contract was between the Government and Boyd-Hammond, Larco's claims were required to be filed in the name of Boyd-Hammond. At the time the claims were filed, there was no agreement between Boyd-Hammond and Larco as to the manner in which the parties would share in the recovery from the Government on the claims. Later, a letter agreement dated December 15, 1971, as to the division of the proceeds of the claims against the Government, effective on April 10, 1972, was entered into by the parties.

In July 1972 a meeting was scheduled with the Government for August 2, 1972, to discuss the settlement of the claims. On Monday, July 31, 1972, in preparation of the meeting with the Government, Monte Boyd, one of the plaintiffs, and plaintiffs' attorney, Mr. Lynn M. Ewing, Jr., met with Gary L. Rawlings, President of Larco, and Mr. Victor Miceli, its attorney, in Dallas for the purpose of discussing the pending settlement negotiations with the Government. At that time it was decided that Gary L. Rawlings and Victor Miceli would meet with the Government representatives and would represent the interest of Boyd-Hammond and Larco. It was also agreed that Monte Boyd, Otis Hammond and Mr. Ewing would remain available by telephone to discuss any offers of settlement that the Government might make. Also, at the meeting it was reaffirmed that the proceeds of any settlement, after payment of expenses and attorneys' fees, would be paid 60 percent to Boyd-Hammond and 40 percent to Larco. Rawlings and Miceli met with the representatives of the Government on August 1, 1972, and the representatives of the Government offered to settle all claims arising out of its contract with Boyd-Hammond for the gross sum of $155,000. Rawlings, as President of Larco, refused to accept the offer unless Boyd-Hammond agreed that all claims against Larco and its surety (Fireman's) involved in the instant lawsuit were waived and the lawsuit dismissed.

In accordance with the agreement of the parties, Mr. Miceli immediately telephoned Mr. Ewing and advised him of the Government's offer for settlement and that the offer was not agreeable to Larco unless it also included settlement of Boyd-Hammond's and Larco's claims against each other and a dismissal of the lawsuit. Also, Mr. Miceli stated to Mr. Ewing that the exact amount that each party would receive from the settlement would be determined by the terms of the letter agreement of December 15, 1971. Mr. Ewing advised Mr. Miceli that he would contact the plaintiffs and would call him back as soon as he was able to discuss the matter with them. Mr. Ewing immediately conferred with Monte Boyd and Otis Hammond and telephoned Mr. Miceli at Ft. Sill, Okla., and advised him that Boyd-Hammond agreed to settle the claims against the Government for $155,000 and that the money would be distributed according to the agreement contained in the letter contract above mentioned, and that the lawsuit would be dismissed with each party to bear its own costs and expenses.

Upon receipt of this information from Mr. Ewing, Mr. Miceli, at the request of the Government, executed and delivered to the Government the following statement:

## "STATEMENT

### 2 August 1972

"The Boyd-Hammond Contracting Company and its subcontractor, Larco Industrial Painting Corporation, in

consideration of payment to Boyd-Hammond Contracting Company in the sum of $155,000, will accept said sum in complete satisfaction of all claims filed by Boyd-Hammond Contracting Company against the Government on Contract No. DABDO5–68–C–0383, and that Boyd-Hammond Contracting Company will, at its own expense, settle any claim between it and its subcontractor, Larco Industrial Painting Corporation. Boyd-Hammond Contracting Company and Larco Industrial Painting Corporation agree that no further claims will be filed.

/s/ Victor Miceli

VICTOR MICELI
Attorney for Boyd-Hammond
Contracting Company and
Larco Industrial Painting
Corporation

DATE: 8/2/72"

On or about August 4 or 7, Mr. Ewing telephoned Mr. Miceli and stated that Boyd-Hammond would not dismiss the lawsuit; that they intended to take all the proceeds from the settlement, pay the attorneys' fees and escrow Larco's share.

On October 12, 1972, the Government mailed to Mr. Miceli a modification of contract, which Boyd-Hammond was required to execute in order to effect the settlement and for the Government to obtain the necessary funds. The document was not forwarded to Boyd-Hammond by Mr. Miceli because of its threat to appropriate the entire proceeds of the settlement contrary to the agreement of the parties.

Prior to the filing of the motion now before the court, Larco submitted a request for admission of facts, which were answered by Monte Boyd on March 2 and filed in the Clerk's office on March 5, 1973. An examination of the requests and the response thereto discloses that all the requests were admitted except request No. 7, and the answer to that particular request is a mere denial that plaintiffs agreed to dismiss the lawsuit upon the payment by the Government of the amount of the settlement, $155,000.

On March 27, 1973, both plaintiffs executed individual affidavits which were introduced at the hearing on the motion. In each affidavit the plaintiffs state that they never understood "that Boyd-Hammond Contracting Company was required, as a condition of accepting the offer of settlement made by the United States Government, to dismiss its suit against Larco Industrial Painting Corporation." The affiants further state that when they learned that Mr. Ewing, their attorney, had advised Mr. Miceli that the suit would be dismissed, they immediately advised Mr. Ewing that they would not so agree to accept the settlement offer of the United States, but Mr. Ewing, relying upon his conference with his client, Boyd-Hammond, had advised Mr. Miceli of the acceptance and had authorized Mr. Miceli to execute and deliver to the Government the statement of acceptance as heretofore set forth. Thus, the plaintiffs undertook to withdraw their acceptance after it had been accepted and the Government notified of the action.

In the ore tenus testimony given by Mr. Ewing at the hearing on the motion, he agreed with Mr. Miceli that he had advised Mr. Miceli that his client, Boyd-Hammond, had accepted the offer and would dismiss the suit. Mr. Ewing was asked the question whether or not he advised his client to repudiate the agreement to accept the proposition, and he stated positively that he did not because he was of the opinion that it was a good proposition and was fair to the plaintiffs as well as to the defendants.

*The Applicable Law*

In Mungin v. Calmar Steamship Corp., (D.Md.1972) 342 F.Supp. 484, the court at page 485 said:

"It is well established that this Court has inherent power to summarily enforce settlement agreements entered into in an action pending before it. E. g., Autera v. Robinson, 136 U.

S.App.D.C. 216, 419 F.2d 1197 (1969); Kelly v. Greer, 365 F.2d 669 (3rd Cir. 1966); Beirne v. Fitch Sanitarium, Inc., 167 F.Supp. 652 (S.D. N.Y.1958); McKenzie v. Boorhem, 117 F.Supp. 433 (W.D.Ark.1954). And it is established by the pleadings that settlement was in fact concluded between the parties' counsel, each having express authority from his client to do so. Therefore, the only question is whether the internal mistake on the part of the insurer of third party defendant is sufficient to vitiate this agreement.

"As a general principle, the settlement of disputes is favored by the courts, Williams v. First National Bank, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910); consequently, 'one who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.' Callen v. Pennsylvania R. Co., 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948); General Discount Corp. v. Schram, 47 F.Supp. 845 (E.D.Mich. 1942)."

In Autera v. Robinson, (1969) 136 U. S.App.D.C. 216, 419 F.2d 1197 at page 1199, the court said:

"Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should. When the effort is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial, and the preparation and proceedings that must forerun it. By the same token, there is everything to be gained by encouraging methodology that facilitates compromises.

"That vast numbers of cases are annually terminated without trial is a tribute to both the trial bench and the practicing bar. As is inevitable, problems concerning settlement do arise in particular instances, but in overwhelming part they are readily accommodated by nonlitigative processes. For the most part, they are thrashed out by counsel themselves; and trial attorneys as a group are aware of the readiness of the courts to lend a helping hand, and of the role that judges, if need be, can play in the resolution of the difficulties. We ourselves could hardly afford to do less than nurture the conditions that for so many years have fostered the machinery of compromise as we know it today."

The court at page 1200 further said:

"It is now well established that the trial court has power to summarily enforce on motion a settlement agreement entered into by litigants while the litigation is pending before it."

In support of the above statement, the court in Footnote 9 listed a great many decisions of the courts, including the decision of McKenzie v. Boorham, (W.D. Ark.1954) 117 F.Supp. 433.

In McKenzie v. Boorhem, supra, this court had under consideration a motion for judgment in accordance with a settlement agreement, and on January 5, 1954, a hearing was had on said motion. Beginning at page 435 the court said:

"Generally, a compromise agreement may be enforced by motion in the original action. Arkansas State Highway Commmission v. Partain, 193 Ark. 803, 807, 103 S.W.2d 53; Union Central Life Insurance Company v. Boggs, 188 Ark. 604, 66 S.W.2d 1077; Ozark Insurance Company v. Leatherwood, 79 Ark. 252, 96 S.W. 374; 15 C.J.S. Compromise and Settlement § 48, p. 770.

"Under the Arkansas law, an attorney has no implied authority to enter into a compromise agreement. Turner furnishing Goods Company v. Snyder, 201 Ark. 699, 146 S.W.2d 913; Cullin-McCurdy Construction Company v. Vulcan Iron Works, 93 Ark. 342, 124

S.W. 1023. However, when a client gives his attorney specific authority to enter into a compromise agreement, such an agreement, if entered into by the attorney, is valid and binding. Byford v. Gates Brothers Lumber Company, 216 Ark. 400, 225 S.W.2d 929; Moore v. Murrell, 56 Ark. 375, 19 S.W. 973; 30 A.L.R.2d 944–958; 5 Am.Jur., Attorneys at Law, Section 98, Pages 318–320; 7 C.J.S. Attorney and Client § 105, p. 928 et seq."

In Main Line Theatres, Inc., v. Paramount Film Distributing Corp., (E.D. Pa.1960) 189 F.Supp. 314, at page 317, the court found that there was an oral agreement to settle two cases, and said "that where a definite oral contract is made, it is effective when orally accept- ·ed and the parties will be required to ex- ecute any written documents contemplat- ed as necessary to carry out the terms of the oral agreement."

At page 318 the court said:

"Plaintiffs cannot avoid such a settle- ment agreement on the ground that they do not like a release which de- fendants are willing even to execute in a form exactly as desired by plaintiffs (N.T. 97–99). See McKenzie v. Boor- hem, D.C.W.D.Ark.1954, 117 F.Supp. 433, 435–436, where the court said at page 436:

" 'The agreement was complete and binding at that time, and the fact that the written agreement ten- dered to Boorhem for signing might not have conformed to the oral set- tlement agreement would not in any wise affect the validity of said oral agreement.' "

In Berger v. Grace Line, Inc., (E.D. Pa.1971) 343 F.Supp. 755, at page 756, the court in disposing of a petition to enforce a settlement agreement said:

"A trial court has the authority to enforce, on motion, a settlement agreement entered into by litigants while litigation is pending. Autera v. Robinson, 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969); Kelly v. Greer, 365 F.2d 669 (3rd Cir. 1966); cert. den.

385 U.S. 1035, 87 S.Ct. 772, 17 L.Ed. 2d 682 (1967). In the instant case there is no question that plaintiff vol- untarily and intelligently entered into a binding settlement agreement. Al- though plaintiff alleges that the agreement should not be enforced, his reasons are without merit. Accord- ingly, defendant's petition will be granted."

## Conclusion

Boyd-Hammond makes no contention that its attorney, Mr. Ewing, did not have full authority to represent it and to advise Mr. Miceli, who was conducting the settlement proceedings with the Gov- ernment, that it agreed that the offer of $155,000 made by the Government should be accepted, and that in accord- ance with the demand made by the de- fendant Larco the suit would be dis- missed. It is true that it apparently lat- er changed its mind but not before the settlement had been accepted and con- cluded. Boyd-Hammond does not deny that it did in fact accept the settlement proposition and that it would dismiss the suit, but now states that it did not understand that the suit was to be dis- missed.

The parties to this controversy were represented by able, conscientious and honest attorneys, and through the ef- forts of the attorneys, with full authori- ty and approval of their clients, the set- tlement was entered into in good faith. There was no fraud or mutual mistake. The court is convinced that Mr. Ewing fully and completely stated the proposi- tion to his client and it agreed that Mr. Ewing should advise Mr. Miceli and Larco that the proposition of Larco was accepted and that the lawsuit would be dismissed. Therefore the motion for summary judgment should be sustained.

An order is being entered today sus- taining the motion and dismissing the complaint of Boyd-Hammond and the counterclaims of Larco, and upon the payment of the $155,000 into the regis-

try of the court, the Clerk will be ordered to remit the proceeds to the parties in accordance with the settlement agreement.