Rodger **REID, Individually, Rodger Reid, as the father and next friend of Katherine R. Reid, a minor, Katherine R. Reid, Individually, and Katherine L. Reid, Individually, Plaintiffs,**

v.

**Kenneth C. GRAYBEAL and Donald L. Bryson, both Individually, Farmers Insurance Company, Inc., and Kansas Farm Bureau Insurance Company, Defendants.**

**No. CIV–75–1057–D.**

United States District Court, W. D. Oklahoma.

May 27, 1977.

---

E. W. Keller, Paul F. Fernald, Norman A. Lamb, Enid, Okl., for plaintiffs.

Page Dobson, Oklahoma City, Okl., for plaintiffs' attorneys.

John W. Raley, Ponca City, Okl., Michael C. Stewart, Earl D. Mills, Oklahoma City, Okl., for defendants Graybeal and Bryson.

Calvin W. Hendrickson, Oklahoma City, Okl., for defendants Bryson and Kansas Farm Bureau Ins. and for attorney Stewart.

Kenneth N. McKinney, Oklahoma City, Okl., for defendants Graybeal and Farmers Ins. Co. and for attorney Mills.

Guy P. Clark, Ponca City, Okl., for attorney Raley.

## ORDER

DAUGHERTY, Chief Judge.

An evidentiary hearing has been conducted on Plaintiff's Motion to enforce an oral compromise settlement agreement alleged to have been reached herein between the parties on or about October 25, 1976. As two insurance companies (the insurer of each Defendant) were involved in the settlement agreement, they have been made parties Defendant herein as shown in the above caption by agreement of all parties for the purposes of this proceeding only. Defendants oppose the Motion asserting that the settlement agreement should not be enforced by reason of being only a conditional settlement with one or more of the conditions never being met; because of mutual mistake; and that Plaintiffs had an election of remedies after the settlement agreement was not complied with and prior

to the jury trial herein which commenced on December 20, 1976 (which ended in a mistrial) between proceeding in contract to enforce the settlement agreement or in tort before the jury and by proceeding to jury trial rather than moving to enforce the contract the Plaintiffs made an election of remedies in that direction which constitutes a waiver or estoppel as to Plaintiffs' right to now enforce the settlement agreement.

The evidence discloses that in the accident involved in this case the minor Plaintiff received serious personal injuries, her mother received minor personal injuries and her father received property damage to his automobile as a result of a motor vehicle collision between the Plaintiffs' vehicle and one driven by Defendant Graybeal as agent for Defendant Bryson. Bryson had insurance coverage in the amount of $50,000.00 for one person, $100,000.00 for one accident and $10,000.00 for property damage. This policy afforded primary coverage for this accident. Defendant Graybeal had insurance coverage in the amount of $50,000.00 for one person, $100,000.00 for one accident and $20,000.00 for property damage. This policy was secondarily liable with reference to this accident and therefore excess over the limits of the Bryson policy.

After the accident but before this case was referred to attorneys the Graybeal policy on application of the insured was increased to $100,000.00 for one person, $300,000.00 for one accident and $20,000.00 for property damage. Through error the new limits (not in force at the time of the accident involved herein) were given to the agents and attorneys of the Graybeal insurance carrier in connection with the handling of this case.

The evidence reveals that in settling the case an agreement was reached to settle the same as to all three claims for $160,000.00. The evidence further reveals that in negotiations leading to the settlement of the case for $160,000.00 the attorneys for Graybeal believed and represented to the attorneys for Plaintiffs and attorneys for Defendant Bryson that it had $100,000.00 coverage for one person which could be paid for the injuries of the minor child and the attorneys for Bryson advised that Bryson had coverage of $50,000.00 for one person which could be applied to the claim of the minor child. The Bryson policy also offered $7,500.00 for the personal injuries of the mother and $2,500.00 for the property loss of the father. This came from the one accident and property coverage of this primary policy. This $160,000.00 settlement was offered as a package by the two insurance companies for the Defendants with allotment to the three claims as aforesaid. This $160,000.00 offer was accepted by Plaintiffs through their attorneys. The attorneys for plaintiffs in connection with the settlement requested that defense counsel present with the settlement papers certified copies of the face sheets of each of the two policies involved showing the policy limits as to each. It appears that as the necessary closing papers were being prepared the insurance carrier for Graybeal discovered for the first time that it had reported erroneous policy limits to its attorneys with reference to this case and that in fact only $50,000.00 was available for each person in connection with this accident. The insurance company for Graybeal advised Plaintiff's counsel of this approximately two weeks after the settlement agreement was reached and offered its $50,000.00 policy limits for one person, the minor. The insurance company for Graybeal, though demand was made to conform to the settlement agreement, has refused to do so which has brought about this proceeding. The insurance company for Defendant Bryson has requested and urged the Plaintiffs to accept their $60,000.00 part of the offer, release them from further liability or participation herein and asserts that such payment would be a credit to any judgment which might hereafter be recovered against Defendant Graybeal. The Plaintiffs have rejected this request and offer in open Court and have stated their position to be that they desire only to enforce the entire settlement agreement in the amount of $160,000.00 as to both carriers.

▇▇ The evidence reveals without dispute that the parties did in fact reach an oral settlement agreement of this case as to all claims for $160,000.00 as aforesaid. That it was an oral settlement agreement does not affect its validity. *Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969); *Boyd v. Larco-Industrial Painting Corporation,* 356 F.Supp. 917 (W.D.Ark. 1973). Voluntary settlements of civil controversies are highly favored by the Courts. *Autera v. Robinson, supra.* The trial court has power to summarily enforce on motion a settlement agreement entered into by litigants while the litigation is pending before the Court.[1] *Autera v. Robinson, supra; Boyd v. Larco-Industrial Painting Corporation, supra.*

It was the testimony of Plaintiffs' counsel that the case of the minor Plaintiff was worth from $500,000.00 to $750,000.00[2] and that the settlement agreement reached in the amount of $160,000.00 was based on the represented facts that the limits of the two policies of insurance which could be applied to the minor Plaintiff were $100,000.00 for Defendant Graybeal and $50,000.00 for Defendant Bryson.

In *Mungin v. Calmar Steamship Corporation,* 342 F.Supp. 484 (D.Md.1972) the Court stated:

"It is well established that this Court has inherent power to summarily enforce settlement agreements entered into in an action pending before it. E. g., *Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969); *Kelly v. Greer,* 365 F.2d 669 (3rd Cir. 1966); *Beirne v. Fitch Sanitarium, Inc.,* 167 F.Supp. 652 (S.D.N.Y.1958); *McKenzie v. Boorhem,* 117 F.Supp. 433 (W.D.Ark.1954). And it is established by the pleadings that settlement was in fact concluded between the parties' counsel, each having express authority from his client to do so. Therefore, the only question is whether the internal mistake on the part of the insurer of third party defendant is sufficient to vitiate this agreement.

"As a general principle, the settlement of disputes is favored by the courts, *Williams v. First National Bank,* 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910); consequently, 'one who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.' *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948); *General Discount Corp. v. Schram,* 47 F.Supp. 845 (E.D.Mich.1942)."

▇▇ No one herein asserts that fraud was practiced by anyone in connection with the said oral settlement agreement. The evidence shows that the initial error in stating an incorrect policy limit in the Graybeal policy for one person was Graybeal's insurance carrier, the Defendant Farmers Insurance Company, Inc. Hence, Defendants have the burden of showing that the parties to the agreement acted under a mutual mistake and such taints the settlement agreement with invalidity.

▇▇ Under Oklahoma law, which governs this diversity action, a mistake of fact is defined by statute as follows:

15 Okl.Stat. § 63:

*"Mistake of fact defined*

Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

2. *Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."* (Emphasis supplied).

---

1. But the Court determined in view of the defenses raised to enforcing the settlement agreement that a plenary hearing was necessary and the Court could not summarily enforce the settlement agreement. *Pearson v. Ecological Science Corp.,* 522 F.2d 171 (Fifth Cir. 1975).

2. One attorney for Plaintiffs testified that the case was worth $250,000.00.

Oklahoma law is clear that when the minds of contracting parties fail to meet because of a mutual mistake which goes to the essence of the agreement, there is no consent and the contract is unenforceable. *Percival Const. Co. v. Miller & Miller Auctioneers,* 532 F.2d 166 (Tenth Cir. 1976). The case of *B. L. Ivey Construction Co. v. Pilot Fire and Casualty Co.,* 295 F.Supp. 840 (N.D.Ga.1968), though not from Oklahoma, gives assistance in its holding that a mutual mistake is generally considered one which is reciprocal and common to both parties, each laboring under the same misconception as to the terms of the contract. A crucial element is thus whether both parties are laboring under the same misconception.

■ The evidence clearly reveals and the Court so finds that leading up to the oral settlement agreement, discussions were had between all attorneys then in the case regarding the policy limits of the Graybeal policy for one person and that the attorney for Graybeal represented the same to be $100,000.00; that the settlement agreement was reached on this basis; that the policy limits of the Graybeal policy went to the essence of the settlement agreement; that Plaintiffs, Graybeal's carrier, Bryson's carrier and their attorneys all thought the correct policy limit of the Graybeal policy for one person was $100,000.00; that this mistake was common to all and each labored under the same misconception as to the said policy limit of the Graybeal policy for one person. It therefore appears that the settlement agreement was entered into by mutual mistake; that the policy limit of the Graybeal policy for one person went to the essence of the contract; that because of such common and reciprocal misconception amounting to a mutual mistake, the settlement agreement is not enforceable.

The fact only one party to the settlement agreement initially made the error as to the policy limit for one person does not defeat the foregoing conclusion. The settlement agreement might be enforceable (no mutual mistake) if the policy limit of the Graybeal policy for one person did not go to the essence of the settlement agreement and the settlement agreement was reached by the parties thereto either independently of the policy limit of the Graybeal policy for one person or without the Plaintiffs knowing the policy limit of the Graybeal policy for one person. But this is not the way in which this settlement agreement was entered into. The erroneous policy limit for one person was divulged to all parties to the settlement agreement in advance of the settlement agreement being reached, the said policy limit went to the essence of the agreement, Plaintiffs demanded certified proof thereof in closing the settlement and all parties labored under the same misconception as to the said policy limit for one person. The testimony of Plaintiffs' attorneys was to the effect that if the policy limits for one person in the two policies was greater than $150,000.00 they would not have settled the minor's claim for $150,000.00 as they did in the settlement agreement now under consideration.[3]

Finding that the settlement agreement may not be enforced by reason of mutual mistake of the parties thereto as aforesaid it is unnecessary for the Court to consider the other defenses that the settlement agreement was conditional with conditions not being met and that the Plaintiffs waived the enforcement of the settlement agreement by proceeding to jury trial after Graybeal's carrier refused to comply with the agreement. Also as Plaintiffs are not willing to accept the offer of Defendant Bryson's carrier that they accept his part of the settlement agreement, namely $60,000.00, and being shown no authority in the Court to cause Plaintiffs to accept this offer, this issue as it has come about in this proceeding will be disregarded.

Plaintiffs' Motion to enforce the settlement agreement should therefore be denied.

---

**3.** *Mungin, supra,* mentions an internal mistake. The mistake in the case at bar was perhaps at first internal in Graybeal's carrier. All mistakes must have an origin. But the mistake ceased to be internal when it was passed on to the Plaintiffs, then all parties to the settlement agreement relied on it, it went to the very essence of their settlement agreement and all labored under the same misconception.