**Harold LEONARD, Plaintiff,**

v.

**UNIVERSITY OF DELAWARE, a corporation of the State of Delaware, Paul Mettler, and Mary Martin, Defendants.**

**No. CIV.A. 96–360–GMS.**

United States District Court,
D. Delaware.

May 24, 2002.

Thomas Stephen Neuberger, Thomas Neuberger, P.A., Wilmington, DE, for Plaintiff.

W. HArding Drane, Kathleen Furey Mc-Donough, Potter, Anderson & Corron, Wilmington, DE, for Defendant.

## *MEMORANDUM AND ORDER*

SLEET, District Judge.

## I. INTRODUCTION

On July 2, 1996, Harold Leonard ("Leonard") filed the above-captioned action against the University of Delaware ("the University"), Paul Mettler, and Mary Martin (collectively "the defendants") for violating his constitutional right to due process and for breaching a prior settlement agreement. Specifically, Leonard alleges that the faculty of the Physical Therapy department were trying to force him

out of both the program and the University.

Presently before the court is the defendants' motion to enforce a settlement agreement between the parties. For the following reasons, the court will grant the motion.

## II. STANDARD OF REVIEW

■■■■ A district court has jurisdiction to enforce a settlement agreement entered into by litigants in a case pending before it. *See Hobbs & Co. v. American Investors Mgt., Inc.*, 576 F.2d 29, 33 (3d Cir. 1978). Motions for enforcement of settlement agreements resemble motions for summary judgment. *See Tiernan v. Devoe*, 923 F.2d 1024, 1031–32 (3d Cir.1991). Therefore, the court must employ a similar standard of review. *See id.* The court must treat all the non-movant's assertions as true, and "when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Id.* at 1032. Accordingly, "[c]ourts should not summarily enforce purported settlement agreements, in the absence of an evidentiary hearing, where material facts concerning the existence or terms of an agreement to settle are in dispute." *The Intellisource Group, Inc. v. Williams*, 1999 WL 615114, 1999 U.S. Dist. LEXIS 12446, at *10 (D.Del. Aug. 11, 1999).

## III. BACKGROUND

On November 21, 2001, the defendants maintain that they reached a settlement agreement with Leonard. The terms of the purported agreement contained the following two conditions: (1) the University would award Leonard a Masters of Science degree in Health Promotion and (2)

the University would pay Leonard $300,000.

The parties reached agreement on these terms of settlement as a result of a lengthy settlement conference convened by the court on November 20, 2001. The November 20, 2001 settlement conference was preceded by a settlement conference on November 2, 2001. The purpose of the earlier settlement conference was to discuss the University's offer to permit Leonard to earn a Master's degree in Physical Therapy. After negotiating for several hours, Leonard rejected this offer. At that time, he indicated, through his counsel, Mr. Neuberger, that any settlement agreement would have to include a monetary payment.

Throughout the November 20, 2001 negotiations, the defendants maintain that they were under the impression that Leonard continued to be represented by counsel.[1] Under that assumption, the defendants then proceeded to implement the terms of the settlement. This required them to restructure and reclassify Leonard's academic record to support a Master's Degree in Health Promotion. The defendants communicated with Leonard's counsel regarding Leonard's academic record throughout this process.

On January 18, 2002, the defendants' counsel forwarded to Mr. Neuberger the University's proposed revised transcript. Once Leonard had reviewed and approved his transcript, the University contends it was prepared to award him a Master's degree in Health Promotion on or about February 5, 2002.[2]

Several weeks after sending the January 18, 2002 communication, the defendants

---

1. Although Leonard's counsel had previously filed a motion to withdraw from the case, the court merely took this motion under advisement. Accordingly, Leonard remained represented.

2. February 5, 2002 is the date when the University was to award degrees, following the conclusion of the University's Winter Session.

received a voicemail message from Mr. Neuberger. In that voicemail, he indicated that his client had reviewed the proposed revised transcript and had requested that a few modifications be made. The University made the requested changes. On March 4, 2002, the defendants forwarded the revised transcript, along with the Settlement Agreement, to Mr. Neuberger.

On March 24, 2002, the court received a letter directly from Leonard. In that letter, Leonard stated that there was no settlement and requested that his case be put back on the trial calendar. The bases for his request are that: (1) his counsel did not represent him during the settlement negotiations, (2) the settlement is "simply unacceptable," and (3) the settlement agreement is the product of duress.

## IV. DISCUSSION

### A. The Enforceability of the Settlement Agreement

■ It is well-settled that the court "has jurisdiction to enforce a settlement agreement entered into by the parties in a case currently pending before it." *Liberate Technologies, LLC v. Worldgate Communications, Inc.*, 133 F.Supp.2d 357, 358 (D.Del.2001); *see also The Intellisource Group, Inc. v. Williams*, 1999 WL 615114, 1999 U.S. Dist. LEXIS 12446, at *10 (D.Del. Aug. 11, 1999). To do so, the court must determine whether the settlement agreement at issue is an enforceable contract under Delaware law. *See The Intellisource Group, Inc.*, 1999 WL 615114, 1999 U.S. Dist. LEXIS, at *12. "Under Delaware law a contract 'comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to

be bound by their agreement on all essential terms.'" *Id.* at *12 (citing *Telephone & Data Sys., Inc. v. Eastex Cellular L.P.*, 1993 WL 244770, at *10 (Del. Ch. Aug. 27, 1993)). In other words, an enforceable contract exists if the parties have reached a definite agreement on all essential terms. *See id.*

■ In the present case, it is clear that the defendants are ready, willing, and able to fulfill their obligations under the settlement agreement. Leonard, on the other hand, is now refusing to fulfill his obligations. Of great importance, however, is the fact that Leonard does not challenge the existence of a settlement agreement between the parties. Indeed, in his March 24, 2002 letter to the court, he acknowledges that he agreed to monetary compensation of $300,000 and a Master's degree. Therefore, whether a settlement agreement actually exists is not at issue. Rather, Leonard argues that any such agreement suffers from defects that would render it void.

Leonard first argues that, although the express terms of the settlement agreement require that he be represented by counsel, he was not represented during the settlement negotiations. The court must disagree. Although Mr. Neuberger filed a motion to withdraw as Leonard's counsel, at no time did the court grant this motion.[3] Moreover, Leonard does not dispute that his attorney had advised him on "acceptable" settlement terms at an earlier time.[4] The fact that Leonard eventually settled on different terms is not proof of inadequate representation. Nor is the court aware of any reason why Leonard could not have consulted with his counsel during the negotiations. To the extent Leonard

---

3. Indeed, as the court took this motion under advisement, it is still pending before the court.

4. Leonard states that Mr. Neuberger had recommended that he not settle for less than $1.2 million, and that he not agree to any stipulations.

chose not to do so, the court will not find that this was inadequate representation on Mr. Neuberger's part.

Leonard next argues that he should be permitted to avoid what he now considers to be an "unacceptable" bargain. Although he lists several "unacceptable" terms in his March 24, 2002 letter to the court, in his subsequent "supplemental response" to the defendants' motion to enforce the settlement, Leonard shifts his position. In that response, Leonard indicated that he is now willing to settle if certain additional conditions are met.

Based on Leonard's renewed settlement requirements, the court concludes that Leonard has apparently missed the point of a settlement agreement in the first instance. Although Leonard now states that he believes settlement is possible on new grounds, one of his explicit conditions is that the settlement agreement must be worded in "such as [*sic*] way as not to waive any claim denying there is a settlement." It is thus apparent to the court that Leonard views settlement agreements as pliable instruments, changeable and challengeable at will, rather than the binding contracts that they are. The court will not sanction Leonard's thinly-veiled attempts to challenge the settlement agreement because he has now decided that he is unhappy with the terms to which he agreed in November.[5] *See, e.g., Haft v. Dart Group Corp.*, 841 F.Supp. 549, 564 (D.Del.1993) (stating that, "[o]f course, central to contract law is the notion that the parties are bound by the terms of their agreement.").

 Leonard further argues that the settlement agreement was the product of stress and/or duress and must therefore be overturned. The court again finds this argument meritless. To prove duress, Leonard must demonstrate: (1) an improper threat, (2) which overcame his free will, and (3) left him with no reasonable alternative to protect his interest. *See E.I. DuPont de Nemours and Co. v. Custom Blending Int'l, Inc.*, 1998 WL 842289, at *4 (Del.Ch. Nov.24, 1998). As proof of his duress, Leonard again argues that Mr. Neuberger's failure to represent him left him "confused in an already stressful situation where [he] lacked experience." He further summarily states that he "felt pressured to settle without counsel." As the court discussed above, Mr. Neuberger continued to legally represent Leonard throughout the settlement negotiations. Leonard was thus not without counsel, nor did he inform the court of any such concerns during the negotiations. He was free to consult with Mr. Neuberger, or not consult with Mr. Neuberger, as was his choice. Nor has he suggested that the defendants acted improperly in their negotiations. Thus, as Leonard has failed to provide any evidence of duress, this argument must fail. *See Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.1991) (noting that summary judgment shall be granted if, in opposition, the non-moving party rests solely "upon mere allegations, general denials, or ... vague statements.").

Finally, Leonard urges the court to disregard the settlement agreement because it does not include a provision for the $17,500 that Mr. Neuberger must refund to him. Mr. Neuberger allegedly owes Leonard this money as a result of a break-

---

**5.** Although Leonard makes much of the "late" timing of the payments and receipt of this diploma, he offers no reason why he did not clarify these points before agreeing to the settlement. Although he does state that it was his "understanding" that the payment would be "immediate," there was no time provision in the settlement agreement, there is no evidence that the parties intended such a provision at that time, and it does not appear that the amount of time that has passed has been unreasonable.

down in the attorney-client relationship. The court finds no reason to overturn a valid settlement agreement on this basis. Whether Mr. Neuberger owes Leonard money is a separate issue from whether Leonard wishes to continue pursuing his claim against the defendants. As the settlement agreement, to which Mr. Neuberger himself is not a party, concerns only Leonard's relationship with the defendants, this argument must fail.

Because the court has found no material facts concerning the existence, or terms, of the settlement agreement to be genuinely in dispute, it will enforce the agreement.

## B. The Defendants' Request for Attorneys' Fees

■ In their motion to enforce the settlement agreement, the defendants also request that the court award them the necessary costs, expenses and attorneys' fees that they expended as a result of Leonard's failure to comply with the settlement agreement. The court will do so.

■ "Attorneys' fees and costs are not ordinarily recoverable and unless specifically authorized by statute are awarded only in extraordinary cases." *Hobbs v. American Investors Mgt., Inc.,* 576 F.2d 29, at 35 (3d Cir.1978) (internal citations omitted). There are, however, exceptions to this rule. Specifically, the court has "the power to assess attorneys' fees for the willful disobedience of a court order as part of the fine to be levied on a defendant ... and the authority to award attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*

While recognizing that a request for attorneys' fees should be granted only in exceptional circumstances, the court concludes that Leonard's attempts at avoidance of his obligations under the settlement agreement is both in bad faith and vexatious. The defendants began fulfilling their obligations under the settlement agreement in good faith. This is evidenced by a series of written and oral communications directed to Leonard's counsel over a period of several months. The defendants took great pains to detail their efforts at fulfilling their obligations in those communications. At no time during the defendants' lengthy preparations did Leonard object to the existence of a valid settlement agreement. Rather, he waited until the end of March, after the defendants had largely met their obligations, to object.

However, the court does not rest its decision merely on Leonard's timing. Indeed, more egregious still is Leonard's behavior during the events leading to the present motion to enforce the settlement. In his initial letter to the court on March 24, 2002, Leonard was unequivocal that he wanted the court to return his case to the trial calendar because he was no longer interested in settling. Nonetheless, on May 2, 2002, through his counsel, he informed the court that he now believes settlement is possible, albeit with additional, different terms added to the agreement. The court finds this behavior troubling for two reasons.

First, as the court discussed in Section A, *supra,* one of Leonard's proposed terms requires that he not be deemed to have waived a later claim denying there is a settlement. It cannot be clearer to the court that Leonard is using settlement as the proverbial carrot, which he is tantalizingly dangling in front of the defendants, but has no intention of giving to them. Based on his new requests, and his earlier behavior, the court concludes that Leonard is not adverse to entering into a binding agreement with the defendants, watching the defendants fulfill their not-minimal obligations, and then later denying there is

an agreement. The court will not sanction such egregious behavior.

Second, one of Leonard's most strenuous objections to the existence of a binding settlement agreement is that he was not adequately represented by his counsel. Because of this, he claims that he was at a disadvantage since he was legally inexperienced and confused at the time of settlement. Leonard has now proposed new settlement terms. However, he is still represented by the same attorney. Thus, either Leonard is in fact quite comfortable handling legal matters on his own, or his attorney is providing him with advice. Regardless of which scenario Leonard argues, it is obvious to the court that Leonard was not acting in good faith when he tried to deny the settlement agreement based on his confusion and his counsel's alleged inadequate representation.[6]

Thus, the court will grant the defendants' request for reasonable attorneys' fees arising from the motion to enforce the settlement.

## V. CONCLUSION

The court concludes that Leonard has not denied the existence of a settlement agreement and has not demonstrated a viable defense to the validity of that agreement. Therefore, the court will enforce the settlement agreement. The court further concludes that the defendants are entitled to reasonable attorneys' fees as a result of Leonard's actions.

For these reasons, IT IS HEREBY ORDERED that:

1. The Defendants' motion to enforce the settlement (D.I.245) is GRANTED;

2. Within five (5) days of the date of this order, the Plaintiff and the Defendants shall execute the existing Settlement Agreement and General Release;

3. Upon execution of the Settlement Agreement and Release by both parties, the Plaintiff and the Defendants shall effectuate the Settlement Agreement and General Release in accordance with its terms;

4. The Defendants' request for attorneys' fees is GRANTED;

5. The Defendants shall submit a fee petition within thirty (30) days of the date of this order.

---

**6.** The court also notes with interest that, in his March 24, 2002 letter to the court, Leonard specifically asked the court to deny his counsel's motion to withdraw. Yet, in the same letter, he also argues that, due to his ineffective counsel, the settlement agreement should be struck down. The court is unclear as to how Leonard can maintain these two very different positions on this issue.