KOLEINIMPORT "ROTTERDAM" N. V.,
Plaintiff,

v.

FORESTON COAL EXPORT CORPORA-
TION, Defendant.
No. 65 Civ. 1790.

United States District Court
S. D. New York.
April 11, 1968.

Ralph A. Gant, New York City, for plaintiff.

Godwin & Lipson, New York City, for defendant; Paul S. Lipson, Frank H. Gordon, Sheldon P. Barr, Stephen H. Kaprelian, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

Defendant moves for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., on the ground that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. For the reasons hereinafter set forth, the motion is hereby denied.

The action is for damages for the breach of two contracts for the sale of coal from the United States to the Netherlands allegedly concluded between defendant, Foreston Coal Export Corporation, as seller, and plaintiff, Koleinimport "Rotterdam" N.V., as buyer. The complaint asserts that the first contract —for the sale of approximately 50,000 tons of anthracite coal—is contained in an exchange of cables between the parties on April 4, 1963; and that the second contract—for the sale of approximately 50,000 tons of bituminous coal—is contained in an exchange of cables on April 19, 1963.

In addition to its answer, defendant has filed in support of its motion a twenty-one page affidavit (with thirty-three exhibits attached) of Arnold L. Sabin, an officer of defendant; a three page affidavit (with three exhibits attached) of Nathan Cohen, formerly a managing director of *plaintiff*; a nine page statement of facts, pursuant to Rule 9(g) of the General Rules of this Court, as to which it urges there is no material issue; and two memoranda of law.

Plaintiff, in opposing the motion, has filed a six page affidavit (with ten exhibits attached) of Henri van den Bergh, a managing director of plaintiff; a three page Rule 9(g) statement; and a memorandum of law.

Depositions apparently have been taken in this case—a 434 page deposition of Mr. van den Bergh of plaintiff and 119 pages of depositions of Messrs. Sabin and Irving Sabsevitz of defendant —but have neither been filed nor submitted; and therefore, cannot be considered by the Court.

It is not necessary to detail the numerous interlaced cables, letters and conversations. A chronological summary will serve the purpose of this motion.

Negotiations with respect to the anthracite coal contract began with defendant's cable to plaintiff of April 2, 1963 [Exhibit 1 to Sabin affidavit], and plaintiff's reply cable of the same date [Exhibit 2 to Sabin affidavit]. Plaintiff argues that a contract was formed by its cable of April 4, 1963 [Exhibit A to the complaint], defendant's reply cable of that date [Exhibit B to the complaint], and a telephone conversation of April 3rd (which is referred to in its cable of April 4th). Plaintiff's cable of April 4th also refers to various terms and conditions contained in the cable exchange of April 2nd.

On the other hand, defendant contends that, on April 4, 1963, there was no agreement as to all terms and conditions which are "essential" or "material" to this type of contract. See Brown v. N. Y. Central R.R. Co., 44 N.Y. 79, 83–84 (1870).

Subsequent to April 4, 1963, there were numerous other cables, letters and conversations—all of which are material to the ultimate question whether a contract was concluded. Under New York law, which the Court assumes is applicable in this action based upon diversity of citizenship,* all writings which

---

* According to the allegations of the complaint, the contracts were made in New York—the place of the acceptances. Defendant, therefore, asserts that New York law governs whether valid contracts were formed. Plaintiff has not disputed

form part of a single transaction and are designed to effectuate the same purpose are to be read together, even though they were executed on different dates. Gordon v. Vincent Youmans, Inc., 358 F.2d 261, 263 (2nd Cir. 1965); Kurz v. United States, 156 F.Supp. 99, 103–104 (S.D. N.Y.1957), affirmed, 254 F.2d 811 (2nd Cir. 1958) (per curiam).

■ Furthermore, the *conduct* of the parties, as expressed in their subsequent cables, letters and conversations, is likewise relevant to the question whether a contract had been formed. Gordon v. Vincent Youmans, Inc., 358 F.2d at 264. See 1 Corbin, Contracts §§ 95, 101 (1963).

The parties exchanged cables on April 5, 1963 [Exhibits 6 and 7 to Sabin affidavit]. Thereafter, from April 8th to April 26th, there was a further complex of at least eight communications (including a telephone conversation on April 10th between Nathan Cohen, managing director of plaintiff, and defendant's president). The parties dispute the meaning and relevancy of some of these communications as well as the inferences reasonably to be drawn from them.

Plaintiff concludes that these communications confirm that a binding agreement had been reached by the exchange of cables on April 4th. On the other hand, defendant concludes that these communications demonstrate that "there was no contract, either by the pleaded cables or by other communications between the parties." [Memorandum of Defendant in Support of Motion for Summary Judgment, p. 22].

The parties also sharply contest the meaning of a series of additional communications commencing with defendant's letter of April 19, 1963 [Exhibit 13 to Sabin affidavit], which enclosed its formal written contract EX–2578, dated April 10, 1963 [Exhibit 14 to Sabin affidavit]. Attached to the contract was an "addendum" which, according to a clause on the face of the contract, was "made a valid part" of the contract with "the same force and effect as though fully set forth on the face. * * *" Plaintiff signed the contract on April 25, 1963 —within the period of time for the "BUYER" to accept—but did not sign the "addendum". The written contract was returned to defendant with plaintiff's letter of April 25th [Exhibit 15 to Sabin affidavit]. The parties exchanged further cables and letters until the final communication relevant to the alleged anthracite contract on May 21, 1963. During this period, there were allegedly oral conversations in Rotterdam on May 15th and 16th between defendant's president, Irving Sabsevitz, and assistant treasurer, Arnold L. Sabin, and plaintiff's two managing directors, van den Bergh and Cohen; a dinner meeting in Rotterdam on May 16th at which the same individuals were present; and, a telephone conversation between representatives of plaintiff and defendant on May 17th.

The parties disagree as to what occurred at the May 16th dinner meeting. Both sides admit that a legend—"By hand—Subject Confirmation from Foreston, N. Y.May 16, 1963"—was written in the upper righthand corner of both the anthracite coal and the bituminous coal contracts by defendant's representative (Sabin), and that plaintiff's representative (Cohen) initialed the legend [See Exhibits 18 and 19 to Sabin affidavit.] However, whereas the Cohen and Sabin affidavits submitted by defendant describe the conversational con-

---

this assertion. Moreover, at this date, neither side has given "notice in his pleadings or other reasonable written notice", pursuant to Rule 44.1, Fed.R.Civ.P., of intention to raise an issue of foreign law— that is, the law of the Netherlands.

The Court will, therefore, assume for the purposes of this motion that New York law governs. In view of the Court's

disposition of the motion, a definitive resolution of the choice of law question is not possible. The trial court must determine not only *whether* contracts were formed, but *where* the contracts were made. See Perrin v. Pearlstein, 314 F. 2d 863, 867 (2nd Cir. 1963); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954).

text of the execution of the legends, the van den Bergh affidavit submitted by plaintiff states that he can "recall no conversation concerning the legends." The parties dispute the meaning and relevancy of the legends as well as the inferences to be drawn from them.

Defendant asserts that the contracts were made conditional on acceptance by plaintiff's New York office. Defendant, of course, denies this conclusion; it asserts that the legends are of no significance.

When we turn to the alleged bituminous coal contract, we find that the web of transactions—cables, letters and oral conversations—is no less entangled. The complaint alleges that a contract was formed by plaintiff's cable of April 19, 1963 [Exhibit C attached to the complaint] and defendant's reply cable of the same date [Exhibit D to the complaint]. These cables refer to earlier cables exchanged on April 10th and 11th [Exhibits 23, 25 and 26 to Sabin affidavit]. A series of other communications both preceded and antedated the exchange of cables of April 19th.

Plaintiff's position is that it had entered into both contracts with the intent of shipping both types of coal together; that defendant knew of this fact [Affidavit of van den Bergh, Para. 23]; and that, therefore, steps were not taken to implement the bituminous coal contract. Defendant's contrary view is that it offered to honor the bituminous contract if it were not conditioned upon the anthracite contract [Sabin affidavit, p. 20], but that plaintiff never accepted that offer.

■ With respect to both contracts, defendant claims that its moving papers (including the documentary exhibits) "affirmatively demonstrate that the parties expressly never reached agreement on all of the essential terms necessary to constitute a contract" [Memorandum of Defendant, p. 2]; that the parties *never* reached a meeting of minds; and that the case is appropriate for summary judgment because there is

no genuine issue of material fact. This position is sharply challenged by plaintiff who points out that there are "numerous" genuine issues of fact; that the case is a complex one in light of the numerous cables, letters, and conversations between the parties; and that summary judgment should not be granted.

■ This Court holds that the case is not appropriate for summary judgment. Although it may be doubtful whether plaintiff can prove that contracts were concluded between the parties, " * * * it is a fundamental maxim that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried." American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2nd Cir. 1967).

■ Although a substantial part of the evidence is documentary, the parties dispute the inferences to be drawn therefrom. The inferences to be drawn from such evidence "must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

This is not a case involving the construction or interpretation of "clear and unambiguous" language of documentary exhibits. See Schneider v. McKesson & Robbins, Inc., 254 F.2d 827 (2nd Cir. 1958). In fact, the exact opposite is exemplified by this particular case: ·the transactions are fragmented into numerous cables, letters and conversations; the cables themselves are couched in the vernacular of the trade and are worded in abbreviated phraseology; the parties disagree about the relevancy of some of the documents; and there is a genuine issue as to the meaning and significance of almost all of them. See Gordon v. Vincent Youmans, Inc., 358 F.2d 261 (2nd Cir. 1965); Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2nd Cir. 1965); Kierulff Associates v. Luria

Brothers & Company, 272 F.Supp. 537, 539 (S.D.N.Y.1967). Cf. McNellis v. Merchants National Bank and Trust Company, 390 F.2d 239 (2nd Cir. February 16, 1968).

Nor is this a case where the party opposing the motion fails to supply "concrete particulars" and substantially rests on the allegations of his pleadings, Dressler v. MV Sandpiper, 331 F.2d 130 (2nd Cir. 1964); or supplies only conclusory affidavits, Wilson Jones Co. v. Gilbert & Bennett Mfg. Co., 332 F.2d 216, 219 (2nd Cir. 1964); or simply, raises unsubstantiated doubts, Thomas v. Mutual Benefit Health and Accident Ass'n, 220 F.2d 17 (2nd Cir. 1955), or "suspicions" that some evidence might develop at trial, Schneider v. McKesson & Robbins, Inc., supra.

There is disagreement as to what actually occurred at the Rotterdam dinner meeting. In addition, there are other conversations which, when subjected to probing examination, may cast meaningful light upon the documentary complex.

Even the trade practices and customs are the subject of controversy. Defendant urges that this is no obstacle to the granting of summary judgment because it is willing to concede one of the issues posed [Defendant's Reply Memorandum, pp. 14–15]. Nevertheless, independent expert testimony in this non-jury case would undoubtedly aid a trial court in its task of bringing order out of this evidentiary tohubohu.

The device of summary judgment was conceived as a method of saving the time of the Court and litigants where the case is demonstrably spurious. Where, as here, the time and effort required for a satisfactory definitive resolution of the issues on the basis of the paper record presented on this motion might well exceed that required at a full-dress trial, the Court will not utilize the summary judgment procedure.

The features of the case to which the Court has already alluded make it imprudent, indeed perilous, summarily to dispose of this matter. Miller v. General Outdoor Advertising Co., Inc., 337 F.2d 944 (2nd Cir. 1964). See Gordon v. Vincent Youmans, Inc., supra; Union Insurance Society of Canton, Ltd. v. William Gluckin & Co., supra; Lapidus v. Jesup & Lamont, 276 F.Supp. 762 (S.D. N.Y.1967). A plenary trial will enable the parties to elicit, develop and present all of the relevant facts and circumstances.

In view of the foregoing, defendant's motion for summary judgment is hereby denied. So ordered.