**Emma E. MUNGIN, Administratrix of the Estate of Elijah Mungin, Deceased, et al.,**

v.

**CALMAR STEAMSHIP CORPORATION,**

v.

**ITO CORPORATION OF BALTIMORE** (Formerly Jarka Corporation of Baltimore).

Civ. A. No. 71-288.

United States District Court, D. Maryland.

May 4, 1972.

Bernard J. Sevel and Raymond J. Cardillo, Baltimore, Md., for plaintiffs.

William R. Dorsey, III, Baltimore, Md., for defendant.

NORTHROP, Chief Judge.

Plaintiff, Emma E. Mungin, filed suit in her capacities as personal representative and as widow of deceased against defendant, Calmar Steamship Corp., seeking recovery for the wrongful death of her husband, Elijah Mungin.[1] Defendant in turn impleaded ITO Corporation of Baltimore as third party defendant. Trial was scheduled to begin on March 27, 1972. However, sometime prior to that date, settlement negotiations were entered into by counsel for the plaintiff and the third party defendant, with the approval of defendant's counsel. The negotiating counsel even-

---

1. Claims were filed in the same action by the five illegitimate children of deceased, Phillip Michael Hamilton on his own behalf, and Isabelle Hamilton, as mother and next friend of John Timothy Hamilton, Diane Valda Hamilton, Eunice Elaine Hamilton, and Lloyd William Hamilton. Those claims will be treated in a separate opinion. A claim for personal injury was also filed by Thermon A. Brown, but an Order of Satisfaction has been entered in that matter.

tually reached agreement on a figure that they would recommend to their respective clients. Plaintiff's counsel forwarded the results of these discussions to his client, who, thereupon, gave him express authority to settle her claims at the suggested figure. Counsel for third party defendant likewise forwarded his suggestion to the insurer of ITO Corporation of Baltimore, and, on Friday, March 24, 1972, he was advised by a Baltimore representative of the insurer that he had express authority to settle both of plaintiff's claims for the earlier suggested figure. This acceptance of the plaintiff's offer was then communicated to plaintiff's counsel, who notified his client of the settlement, ceased preparation for trial, and informed his witnesses that they would no longer be needed. On Monday, March 27, 1972, counsel for ITO was informed by a representative of the insurer that the authorization to conclude settlement had been erroneously transmitted to him on the Friday past. Upon being informed of the insurer's decision to refuse to proceed with settlement, plaintiff filed a Motion to Enforce Settlement.

■ It is well established that this Court has inherent power to summarily enforce settlement agreements entered into in an action pending before it. *E. g.*, Autera v. Robinson, 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969); Kelly v. Greer, 365 F.2d 669 (3rd Cir. 1966); Beirne v. Fitch Sanitarium, Inc., 167 F.Supp. 652 (S.D.N.Y.1958); McKenzie v. Boorhem, 117 F.Supp. 433 (W.D.Ark. 1954). And it is established by the pleadings that settlement was in fact concluded between the parties' counsel, each having express authority from his client to do so. Therefore, the only question is whether the internal mistake on the part of the insurer of third party defendant is sufficient to vitiate this agreement.

■ As a general principle, the settlement of disputes is favored by the courts, Williams v. First National Bank, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910); consequently, "one who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." Callen v. Pennsylvania R. Co., 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948); General Discount Corp. v. Schram, 47 F.Supp. 845 (E.D.Mich. 1942).

Defendant, in attempting to carry this burden, asserts that general equitable principles, as illustrated by Rule 60(b) of the Federal Rules of Civil Procedure, compel this Court to vacate this agreement.

■ There is no contention made here that the error which induced the insurer of the third party defendant to conclude settlement was anything but unilateral. This Court acknowledges the existence of general principles of contract law which allow rescission of a contract entered into as a result of a party's unilateral mistake where the opposing party may easily be placed *in statu quo*. However, the Court also acknowledges the existence of two other principles which, taken in conjunction, bar the relief sought here. The first is, as noted above, that a settlement agreement enjoys great favor with the courts; consequently, it is only in the most extraordinary circumstances that such a pact will be vacated, for the general principle is that "a settlement agreement . . . voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court." Cummins Diesel Michigan, Inc. v. The Falcon, 305 F.2d 721 (7th Cir. 1962). Secondly, we do not feel that the contract principle referred to above should extend to the protection of conduct that is so obviously without any excuse as is the present action by the insurer of ITO. Defendant offers no explanation for the insurer's actions, and the Court can only conclude that the agents of the company were simply grossly careless in the management of

its affairs. There was no misunderstanding between the counsel for the parties, and plaintiff's counsel cannot be charged with knowledge of error on the part of the third party defendant's insurer since the acceptance was for the precise sum that had earlier been agreed upon by counsel. And it must be pointed out that the settlement that was reached was the result of arm's length negotiations between counsel; each party had knowledge of all relevant facts or, more importantly, had the opportunity to learn every fact necessary to his respective determinations as to whether settlement would benefit his position.

Under these circumstances, the Court does not feel that defendant has asserted any equitable considerations in behalf of the third party defendant that would warrant setting aside this agreement. Counsel for ITO was given *express authority* by the insurer to conclude settlement. Under these circumstances, it would be unjust to force plaintiff to undergo the expense of litigation which she had every right to expect would not be necessary, to delay the ultimate resolution of this matter, to delay plaintiff's receiving the proceeds of suit which she had every reason to expect to receive at an earlier date, and to seek a new trial date. In addition, a denial of enforcement would punish the plaintiff's counsel's exercise of good faith, as evidenced by his notifying the Court that trial would not be necessary and informing his witnesses they would not be needed, in reliance on opposing counsel's assertion, accurate at that time, that he had authority to settle the dispute. To permit a unilateral mistake under these circumstances to nullify this firm agreement, and thereby allow the insurer of the third party defendant to effectively second-guess the measure of damages that might be awarded, would work an unconscionable hardship on plaintiff, as well as have a deleterious effect on the calendaring of cases in this Court, in violation of Rule 1 of the Federal Rules of Civil Procedure which admonishes the courts to construe the rules "to secure the just, speedy, and inexpensive determination of every action."

In support of its position, defendant has directed the Court's attention to Hester v. New Amsterdam Casualty Co., 268 F.Supp. 623 (D.S.C.1967). However, we point out that the basis for that decision was the liberal policy established by Rule 60(b) of the Federal Rules. Since a court may set aside a judgment for "mistake, inadvertence, surprise, or excusable neglect," it is reasoned that the court must have the power to set aside settlement agreements on the same grounds. Of course, this does not establish a new principle; courts have always had the power to set aside an agreement on these grounds in appropriate circumstances. In Greenspahn v. Joseph E. Seagram & Sons, 186 F.2d 616 (2d Cir. 1951), plaintiff Greenspahn filed suit for specific performance of a contract whereby defendant was obligated to supply certain amounts of whiskey to plaintiff's assignor. After a decree for specific performance was entered for plaintiff, defendant appealed. However, prior to decision, the parties entered into a settlement agreement which provided, *inter alia*, that defendant would comply with the court decree and withdraw its appeal. Later on the same day, defendant discovered that it did not have sufficient whiskey on hand to fulfill its obligation under the contract. Consequently, it refused to honor the settlement and sought both vacation of the earlier court decree, pursuant to Rule 60(b), and vacation of the settlement agreement. The Court, noting that a simple investigation of its books would have revealed defendant's inability to perform, said—

> it appears that the mistake, if any, was only that of the defendant's officer in charge of the litigation. Because of the discretionary character of the remedy of specific performance, a unilateral mistake by the defendant will sometimes be ground for denying the plaintiff a decree for specific performance; but if the defendant was guilty of gross carelessness in making

the mistake, his negligence will dispose the court not to exercise its discretion in his favor. [186 F.2d at 619].

If gross carelessness can prevent the setting aside of a decree under Rule 60(b), this Court sees no reason why that same principle cannot block the setting aside of a settlement agreement on the same ground. In fact, the Court in *Hester* recognized this principle, but concluded that under the circumstances, defendant's negligence was not so gross as to bar relief. In the absence of a reasonable explanation for the "mistake" on the part of the insurer of the third party defendant, this Court feels that failure to comprehend the nature of legal actions pending against it amounts to gross carelessness.

Therefore, equity demands, and the judicial policy of favoring the enforcement of settlement agreements mandates, that plaintiff's Motion to Enforce Settlement be granted. The Court will sign an Order granting Emma E. Mungin judgment against defendant in accordance with the agreement reached by plaintiff's counsel and counsel for ITO, third party defendant.