**NATIONAL LAWYERS GUILD,**
Plaintiff,

v.

**ATTORNEY GENERAL, et. al., Defendants.**

No. 77 Civ. 0999–CLB.

United States District Court, S. D. New York.

May 19, 1982.

Michael Krinsky and Gordon J. Johnson, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., Peter Salerno and Paula Sweeney, Asst. U.S. Atty., New York City, for defendants.

BRIEANT, District Judge.

No objections or appeals from Discovery Order No. 28 or from Discovery Order No. 30 made by Hon. Kent Sinclair, Jr., United States Magistrate, were filed within the time period provided by 28 U.S.C. § 636 and Rule 7, S.D.N.Y. Magistrates Rules.

Accordingly, the findings, conclusions and recommendations in Discovery Order No. 28 and Discovery No. 30 are hereby adopted in their entirety and made the order of this Court. The action is dismissed as to defendants Richard M. Nixon, John N. Mitchell, Richard G. Kleindeinst, Richard Helms, James B. Adams, W. Raymond Wannall, Marion L. Sullivan as Executrix of the Estate of William C. Sullivan, Loretta D. Belmont as Executrix of the Estate of Alan H. Belmont, Robert L. Shackelford, Charles D. Brennan, Frederick J. Baumgardner, John F. Malone, and as to plaintiffs Earl Dickerson, Benjamin Dreyfus, Thomas I. Emerson, Ernest Goodman, William Goodman, James Larson, Chaterine Roraback, Doris Brin Walker and Doron Weinberg all with prejudice and without costs.

So Ordered.

## RECOMMENDED DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING THE INDIVIDUAL DEFENDANTS

### DISCOVERY ORDER NO. 28

KENT SINCLAIR, Jr., United States Magistrate:

The individual defendants[1] moved on January 20, 1982 for summary judgment dismissing them from the case because of a "contract" reached between counsel for plaintiffs and counsel for defendants to effect their dismissal. Plaintiffs, who a few weeks ago agreed voluntarily to dismiss as against these defendants, now oppose the motion. Briefing was completed in late March, 1982. For the reasons set forth briefly below, the motion must be GRANTED. There are no factual disputes warranting a hearing and the legal issues are clear.

## I

## THE FACTS

1. After almost five years of litigation, plaintiffs wrote a carefully worded letter to defense counsel Peter C. Salerno, Esq., dated December 11, 1981. The present motion turns on it; hence it is here set forth in full:

[On letterhead of plaintiffs' counsel]

December 11, 1981

Re: National Lawyers Guild, et al.
v. Attorney General, et al.
No. 77 Civ. 999 (CLB)

Dear Peter:

The extraordinary delay in this case caused, in our view, by the government's slow rate of production of discovery materials, its opposition to reasonable discovery requests and its flawed documentary and other responses to discovery requests, among other matters, and the clear prospect of still further delays in connection with discovery from the government, whatever the results of the pending motion for sanctions, has led us reluctantly to the conclusion that it would be preferable to voluntarily dismiss the individually named defendants represented by the United States Attorneys Office rather than suffer the additional delays and burdens necessarily attendant upon seeking the necessary discovery particular to those defendants and to litigating issues particular to them.

In the same connection, we believe that the individual plaintiffs should be dismissed from this case. As Judge Brieant indicated, their role in this case became symbolic once the class action motion was denied.

---

1. The individual federal defendants are Richard M. Nixon, John N. Mitchell, Richard G. Kleindienst, Richard Helms, James B. Adams, W. Raymond Wannall, Marion L. Sullivan as Executrix of the Estate of William C. Sullivan, Loretta D. Belmont as Executrix of the Estate of Alan H. Belmont, Robert L. Shackelford, Charles D. Brennan, Frederick J. Baumgardner and John F. Malone (the "individual defendants").

We therefore would appreciate your advising us whether you will consent to an order dismissing the individual defendants and the plaintiffs with prejudice and without costs. Given the situation with the representation of the Reeses, I think it would be easier to proceed by way of a motion to which you would consent rather than by stipulation of all the parties.

Yours truly,

/S/ Michael Krinsky

Michael Krinsky

2. On the day defense counsel received the December 11, 1981 letter, December 16, 1981, defendants accepted the proposal in a telephone conversation between lead counsel for both sides. (*Compare* Salerno Aff., January 20, 1982 at ¶ 4 *with* Krinsky Aff., February 9, 1982 at ¶ 7.)

3. After a further telephonic discussion between defense counsel and the office of plaintiffs' counsel on December 16, 1981, Mr. Salerno sent a draft stipulation to plaintiffs' counsel to effectuate the dismissals. Salerno letter, December 17, 1981 and attachment, Ex. B to Notice of Motion.

4. In the litigation context of this case, the factors inuring to plaintiffs' benefit from the proposal, factors which might be argued to be consideration for a contract of settlement, include;

A. Dismissal of the individual defendants would streamline the case, reduce discovery disputes and delays, and avoid future jurisdictional and substantive motions.

B. Dismissal of the individual defendants *without costs* as proposed would insulate plaintiffs from exposure for costs as to these defendants, in general and under the deposition orders as to which substantial dispute was had, before Judge Brieant and me. *See* Exhibits to Defendants' Reply Memorandum.

C. Dismissal of the individual plaintiffs would affect the obligation of these parties to pay costs and provide discovery (both matters on which a court might well *condition* an order of dismissal after five years' litiga-

tion had plaintiffs been forced first to move for leave to dismiss them).

D. Dismissal of the parties proposed without a motion would have saved plaintiffs substantial motion costs and delays.

5. On December 22, 1981 plaintiffs' counsel advised the court that certain portions of pending discovery motions had been mooted by the agreement between counsel that the individual plaintiffs and the individual defendants be dismissed from the action:

[On letterhead of plaintiffs' counsel]

December 22, 1981

The Hon. Kent Sinclair, Jr.

United States Courthouse

Foley Square

New York, New York 10017

Re: National Lawyers' Guild v. Attorney General

Dear Magistrate Sinclair:

In our submission of authorities cited in plaintiff's opposition to the defendant's motion to compel, we apparently neglected to include a copy of the March 30, 1976 decision in *Alliance To End Repression v. Rochford.* A copy is enclosed.

Additionally, we made reference to an Order of Judge Weinstein in *Allen v. United States* denying the government's motion to dismiss on statute of limitations grounds. A copy of the Order, together with the government's memorandum of law in support of the motion to dismiss is enclosed.

Finally, we wish to advise the Court that we have reached agreement with Mr. Salerno for the dismissal of the plaintiffs and the individuals represented by Mr. Salerno from this action. We will be filing shortly a motion or stipulation to obtain this dismissal. Accordingly, it appears that the Court may disregard the portions of the government's motion to compel justified by it on the need to defend the individual defendants.

Respectfully yours,

/S/ Michael Krinsky

Michael Krinsky

CC: Peter Salerno, Esq.

Krinsky letter, December 22, 1981, Ex. C to the present Notice of Motion.

6. On January 11, 1982 plaintiffs' counsel orally advised counsel for the individual defendants that plaintiffs wished to reevaluate their position on dismissal of the individual defendants. Salerno Aff. ¶ 6. The reason was explained in a letter of that date from plaintiffs' counsel to Mr. Salerno. It reflects that events subsequent to the December correspondence and communications had given plaintiffs pause. The letter, in its entirety, reads as follows:

[On letterhead of plaintiffs' counsel]

January 11, 1982

Re: National Lawyers Guild, et al.
Attorney General, et al.
77 Civ. 999 (CLB)

Dear Peter:

Subsequent to our correspondence concerning the dismissal of the individual defendants, the verdict in *Hobson v. Wilson*, U.S.D.C., D.C., No. 76–1326 was returned. Mr. Brennan is one of the defendants in that action against whom a judgment was returned. We are re-evaluating our position on the individual defendants as a result of this verdict. I have not yet been able to obtain a copy of the instructions to the jury in that case but hope to do so quite soon.

I hope to have a final decision on this question very soon and will let you know immediately when we do. If you like, I will write to Magistrate Sinclair advising him that we are re-evaluating our position. However, I do hope to have a final decision within seven days or so.

I am sorry for any inconvenience this may have caused you.

Yours truly,
/S/ Michael Krinsky
Michael Krinsky

MK:ja
P.S.

It would be helpful if you could use your good offices to obtain a copy of the jury instructions in *Hobson*. The defendants were represented by the Department of Justice.

7. Defendants immediately (*i.e.*, in a by-hand letter dated January 11, 1982) expressed the view that a binding agreement for dismissal of these parties existed and would be enforced by the court. Salerno letter, January 11, 1982, Ex. I to Reply Memorandum.

8. On January 12, 1982 plaintiffs wrote to the court, expressing an intention to reevaluate their position within seven days. Krinsky letter, January 12, 1982.

II

LEGAL DISCUSSION

As in so many aspects of this litigation, the parties' positions on this motion are poles apart, almost not meeting one another. Plaintiffs' opposition on this summary judgment application to the enforcement of the December agreement of counsel outlined above is three-fold.

1. A contention that the agreement was not a product of negotiation and that plaintiffs' counsel did not think he was proposing a contractual disposition.

2. A contention that there is no consideration sufficient to support a binding contract.

3. A contention that plaintiffs should be relieved of any contract that did result.

1. *Negotiation and the Intention to Make a Contract.*

Plaintiffs make two related points concerning the process by which the December agreement was reached. They argue (i) that they proposed the bilateral dismissal out of the blue, rather than negotiating sessions with defense counsel, and (ii) that counsel for plaintiffs thought he was just announcing a plan and seeking consent to obviate unnecessary motion practice. Neither of these positions affects the viability of the December agreement.

■ At the outset it may be noted that despite plaintiffs' lament that contract notions simply have no application to agreements made during the pretrial management of litigation (*see* Krinsky Aff., February 9, 1982 at pp. 1–2) the law obviously treats full or partial settlements reached during litigation as potentially invested with contractual dignity if the requisite legal elements are found. *See Pyle v. Wolf Corp.*, 354 F.Supp. 346, 352 (D.Ore.1972). *See also Warner v. Rossingnol*, 513 F.2d 678, 682 (1st Cir. 1975).[2] Plaintiffs, who themselves devote many pages to arguing the law, acknowledge that the law of contracts applies. *See* Plaintiffs' Memorandum of Law, February 11, 1982 at 10–20. Both sides rely on the law of New York.

■ No authority is put forward for the proposition that some quantum of negotiation before agreement is required to make a binding contract. Common sense suggests that many everyday contractual relationships arise when one party has advertised for a sale or service and the other party simply calls and accepts. Similarly, here there is no reason to think that the act of negotiation per se should be a required element for contract. More likely, this argument is a version of the contentions that no offer was intended or no consideration obtained, both discussed below.

■ The related assertion is that *subjectively* plaintiffs' counsel did not think he was proposing a *contract*. *See* Krinsky Aff., February 9, 1982 at pp. 1–2. It is not necessary to a resolution of this motion to discuss whether (putting aside the question of conscious desire to *contract*) plaintiffs' counsel intended that his clients be *bound* by the proposal (which he undoubtedly did at the time) because defendants are clearly right as a matter of law in arguing (Defts. Reply Mem. at 4–5) that an objective test

applies. If plaintiffs' conduct would reasonably be interpreted to create a power of acceptance in defendants, an offer is deemed made in law. The classic exposition of this doctrine in this or any circuit is that of Judge Learned Hand in *Hotchkiss v. Bank of New York*, 200 F. 287, 293 (S.D. N.Y. 1911), *aff'd*, 201 F. 664 (2d Cir. 1912), *aff'd*, 231 U.S. 60, 34 S.Ct. 22, 58 L.Ed. 121 (1913):

> A contract has, strictly speaking, nothing to do with personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.

*Accord: Chase Manhattan Bank v. First Marion Bank*, 437 F.2d 1040 (5th Cir. 1971); *Brown Bros. Electrical Contractors, Inc. v. Beam Const. Co.*, 41 N.Y.2d 397, 393 N.Y. S.2d 350, 361 N.E.2d 999 (1977); *Mencher v. Weiss*, 306 N.Y. 1, 114 N.E.2d 177 (1953). Thus, plaintiffs' assertions of their counsel's subjective intent are simply immaterial. To determine what was the objective intent of the parties, the court must look to their words and deeds at the time. If the parties' expressions and conduct would lead a reasonable man to determine that they intended to reach binding agreement, their agreement will be enforced. *Phillip v. Gallant*, 62 N.Y. 256, 263 (1875); 1 *Corbin on Contracts* § 30 (1964). All of the acts of the parties may be considered, *Aker v. J.J. Fredella Co.*, 227 App.Div. 226, 237 N.Y.S. 442 (1929), including their subsequent con-

---

2. Indeed, the court has inherent power to summarily enforce such agreements, *Hobbs & Co. v. American Investors Mgmt. Inc.*, 576 F.2d 29, 33 (3d Cir. 1978), and to some extent the duty to enforce agreements entered into by litigants before it. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). Once made, a settlement agreement may not be unilaterally repudiated and may be summarily enforced where the facts are capable of resolution. *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967); *Kelly v. Grier*, 365 F.2d 669, 671 (3d Cir. 1966), *cert. denied*, 385 U.S. 1035, 87 S.Ct. 772, 17 L.Ed.2d 682 (1967).

duct acknowledging the existence of a contract. *Koleinimport "Rotterdam" N.Y. v. Foreston Coal Exporting Corp.*, 283 F.Supp. 184, 186 (S.D.N.Y.1968); *Erving Paper Mills v. Hudson-Sharp Mach. Co.*, 223 F.Supp. 913 (E.D.Wis.1963), *rev'd on other grounds*, 332 F.2d 674 (7th Cir.), *cert. denied*, 379 U.S. 946, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964).

Very close to the case at hand is *Farwood Management Co., Inc. v. Jermyn*, Sup.Ct. New York County (N.Y.L.J., p.6, col. 3, Tuesday, April 6, 1982). In that case, the attorneys for the parties reached a settlement agreement over the telephone. On the same day, defendant's counsel wrote to plaintiffs' counsel "to confirm our telephone conversation" and to agree to settlement "on the following terms." The letter further advised that "a formal stipulation of settlement" would soon be sent. Subsequently, defendant disavowed his counsel's letter-agreement and sought to characterize it as unauthorized[3] and unenforceable, at most expressing an intention to agree at a later date, *i.e.*, when the formal stipulation was executed. The court rejected this argument and entered judgment on the basis of the agreement set forth in counsel's letter: "Defendant['s] . . . attempt to renege on his agreement, apparently as a result of an after thought, is . . . unavailing." The court supported its decision with case law holding that an agreement is binding even if the parties intended to take further measures to formalize it and case law holding that settlements are favored and will not be set aside in the absence of fraud or overreaching. *Id.*

■ Plaintiffs' "announcement" of the proposal set forth all elements of the arrangement and the defendants acted reasonably in accepting, both orally and as reflected in the circulation of a draft stipulation for use in filing the agreement with the court. This is not a case where plaintiffs can articulate any material mistake of law or fact on their part, or a misapprehension of the legal significance of the proposed disposition. Any further thrust to this argument is discussed in the next section.

*2. Consideration.*

■ Plaintiffs contend that there is no consideration for their unilateral "decision" to dismiss as to the individual defendants sufficient to turn a generous offer into a binding agreement. *See* Krinsky Aff., February 9, 1982 at p.2.

This argument is frivolous. As found in ¶ I(4) above there are several elements of consideration supporting the agreement. These factors include the relief of the named plaintiffs from the costs and burdens of continued status as plaintiffs, and relief from the motion expenses entailed in a unilateral effort to obtain permission from the court to withdraw as party plaintiffs after some five years of litigation. Other benefits to plaintiffs from the agreement were: streamlining the case, such that delay, discovery burdens and expenses will be reduced; the expenses and burdens of obviously anticipated motions concerning personal jurisdiction and more substantive defenses of the individual defendants.

Not very well buried in plaintiffs' proposal is another benefit to plaintiffs that serves as consideration for the agreement: after considerable prior motion practice before Judge Brieant and me concerning costs, the individual plaintiffs would be dismissed without exposure to costs and the defendants dismissal would give up any claims for costs from the individual plaintiffs or the NLG. It is clear that the giving up of contingent claims can be consideration for an agreement. *See* 17 Corpus Juris Secundum, *Contracts* § 74 at 758–59: "Any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract constitutes sufficient consideration." Once the existence of consideration is shown, as it is here, the court will not enter upon a fine weighing of its sufficiency. *Mencher v. Weiss*, 306 N.Y. 1, 8, 114 N.E.2d 177 (1953). Consideration, "be it ever so small," is sufficient if it exists. *Mandel v. Liebman*, 303 N.Y. 88, 91, 100 N.E.2d 149 (1951).

---

**3.** No contention is made here that counsel acted without the client's authorization.

### 3. *Relief From Agreement.*

Plaintiffs final argument is that their late reversal of positions on dismissal of the individual defendants caused defendants no prejudice. The offer is portrayed as an improvident gesture, recanted after being agreed to by defendants but before any detrimental (or other) reliance by the defendants. And it is true that defendants suffered no prejudice other than loss of the bargain (which entails loss of a significant reduction of burdens for both sides and the court).

The equitable punch of plaintiffs' position (we do not generally enforce waivers of rights of action if reinstatement is fairly achievable) cannot make up for its lack of legal basis. Plaintiffs' cite authorities for the proposition that "negligent expressions" of a party should be remedied, Plts. Mem. at 17–18, but clearly this is not such a case: plaintiffs' counsel meant what he said; the following month it simply did not seem as wise in light of an intervening jury verdict.

More to the point are the authorities standing for the proposition that "stipulations, agreements and arrangements made by the parties during the pendency of an action ... [may be set aside] for inadvertence, improvidence, or excusable neglect by either party if there is no prejudice to the opposite party and it would be inequitable or oppressive to hold the parties to the agreement." *Hester v. New Amsterdam Casualty Co.*, 268 F.2d 623, 627 (D.S.C.1967); *see* cases cited in Plaintiffs' Memorandum at p. 18. Plaintiffs note that the court's power is broadest "where, as here, there had not been part performance or change of position by the other party." *Hester, supra,* 268 F.Supp. at 627.

The only term of such analysis arguably applicable here is inadvertence. Even this concept does not apply however. Plaintiffs knew what they were doing on December 11, 1981. They were not ignorant of any fact or legal principle.

Even accepting arguendo the suggestion implicit in plaintiffs' January 11, 1982 reference to the *Hobson* decision in the District of Columbia, plaintiffs utterly fail to articulate how that new decision changed anything or apprised them of any fact or principle of law about which they were mistaken in December.

■ Strong policies favor enforcement of settlement agreements. *See generally D.H. Overmyer Co. v. Loflin,* 440 F.2d 1213, 1215 (5th Cir.), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1977). Settlements "do much to alleviate overburdened court calendars ... and will not be set aside absent a showing of such good cause as would invalidate a contract." *Myers v. Bernard,* 38 A.D.2d 619, 326 N.Y.S.2d 279 (3d Dep't 1971). *Accord, First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 633 (2d Cir. 1972). Consequently, "one who attacks a settlement must bear the burden of showing that the contract he has made is tainted by invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Mungin v. Calmar Steamship Corp.,* 342 F.Supp. 484 (D.Md.1972), *quoting Callen v. Pennsylvania Ry. Co.,* 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1948).

In *Mungin,* cited in Plaintiffs' Memorandum in Opposition at p.19, one of the defendants, an insurer, sought relief from a settlement compromising a wrongful death action. The insurer argued that its authority had been given erroneously. The court recognized that mistake was grounds for rescission where the opposing party can be placed *in statu quo ante,* but declined to rescind the settlement because two competing principles barred relief. First, inasmuch as settlements are favored by the courts, it is "only in the *most extraordinary circumstances* that such a pact will be vacated," 342 F.Supp. at 485 (emphasis supplied). Second, the *Mungin* defendant had no good excuse for its conduct. Accordingly, *the court granted the motion to enforce the agreement,* concluding that it would be unjust to force the opposing party to undergo the litigation she thought would be unnecessary. *Id.* at 486.

The cases relied upon by plaintiffs arose in different contexts. Thus in *Hester, su-*

*pra*, the mistake precluding enforcement, as in most unilateral mistake cases in which relief is granted, involved a mistake as to a principal *term* of the contract, one which "went to the very heart of the offer." *Id.* at 629. The mistake had nothing to do with either parties' *intention* to contract. In the present case there was no "mistake" as to the terms of the contract. The other cases cited by plaintiffs are also distinguishable.[4]

 In sum, defendants appear correct in arguing that a contract to settle a lawsuit will not be set aside merely because subsequent events have given one side cause to question whether the prior bargain was more beneficial to one side than the other. *Beecher v. Able*, 441 F.Supp. 426, 429 (S.D. N.Y.1977), *aff'd*, 575 F.2d 1010 (2d Cir. 1978). *Accord, Strange v. Gulf & So. Amer. Steamship Co.*, 495 F.2d 1235, 1237 (5th Cir. 1974).

### III

### CONCLUSION

In light of the facts and legal discussion above, IT IS RECOMMENDED that summary judgment be granted enforcing the settlement agreement proposed by plaintiffs in writing on December 11, 1981, calling for the dismissal of the individual defendants, dismissal of the individual plaintiffs, and the forswearing of all claims for costs on the part of the parties so dismissed.

Pursuant to 28 U.S.C. § 636, as amended, the parties shall have ten (10) days within which to lodge written objections to the foregoing Recommended Decision with the Honorable Charles L. Brieant. Such submissions should be filed with the Clerk of Court, with extra copies delivered to the Chambers of Judge Brieant, Room 2103, and the Chambers of the undersigned, Room 431.

---

4. *See Future Plastics, Inc. v. Ware Shoals Plastics, Inc.*, 407 F.2d 1042 (4th Cir. 1968) (court granted relief because there was a *mutual mistake* as to the value of the consideration supporting the compromise); *Brast v. Winding Gulf Colliery Co.*, 94 F.2d 179 (4th Cir. 1938) (no consideration; the party opposing enforcement had been laboring under a material mistake of law); *Dalton v. Bowers*, 53 F.2d 373 (2d Cir. 1931) (the court relieved one of the parties from his stipulation not to seek a second extension of time within which to appeal; "[s]uch stipulations are not as irrevocable as other contracts . . . ." *Id.* at 374); *Maryland Cas. Co. v. Rickenbacker*, 146 F.2d 751 (4th Cir. 1944) (the court relieved the appellant insurance company from a stipulation narrowing the issues to be tried before the lower court because the insurance company's attorneys had been reasonably ignorant of the fact, outside those stipulated, that would have justifiably voided the insurance coverage).